RILEY, Circuit Judge.
Steven Spears (Spears) appeals his conviction for conspiracy to distribute 50 grams, or more of cocaine base (crack cocaine), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and 500 grams or more of cocaine salt (powder cocaine), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). The government cross-appeals, arguing the district court erred in granting a downward variance based solely" on the district court’s categorical rejection of the 100:1 powder cocaine to crack cocaine quantity ratio inherent in the United States Sentencing Guidelines (Guidelines). For the reasons stated below, we affirm Spears’s conviction, and we reverse his sentence and remand to the district court for resentencing.
I. BACKGROUND
On June 2, 2004, law enforcement responded to an anonymous report of drug trafficking in a room at the Hamilton Inn in Sioux City, Iowa. The responding officers observed a high volume of traffic entering and leaving the hotel room. The officers stopped several vehicles, whose occupants had been observed leaving the room. Upon searching the vehicles, the officers discovered crack cocaine. The officers obtained and executed a search warrant on the hotel room and found Spears, Elliott Ward (Ward), and one other person inside the room. The officers searched Spears and found $805 in cash, but no cocaine. Spears was arrested, and after receiving his Miranda[1] warnings, Spears admitted in a videotaped interview with law enforcement that he previously sold both powder and crack cocaine.
At trial, five cooperating witnesses testified for the government. John Spencer (Spencer) testified he witnessed Spears receive more than two ounces of powder cocaine on ten or more occasions. Spencer said Spears cooked some of the powder cocaine into crack cocaine. Spencer also related that between 2003 and October 2004, he purchased a total of seven to eight ounces or more of crack cocaine from Spears, and then sold smaller quantities to others. Spencer further testified to making trips to Chicago, Illinois, with Spears and purchasing five or more ounces of cocaine per trip. Go-conspirators Calvin Bailey (Bailey) and Ward testified they pooled money with Spears and purchased one-half ounce to nine ounce quantities of powder cocaine from various drug sources. Ward admitted buying both powder and crack cocaine from Spears. Two other *1169 cooperating witnesses gave similar testimonies. All cooperating witnesses testified in hopes of receiving reduced sentences.
The jury convicted Spears of conspiracy to distribute 1,792 grams of crack cocaine and 500 grams of powder cocaine. At sentencing, the district court concluded the drug quantities produced a total offense level of 38. Based on Spears’s criminal history category of IV, the resulting advisory Guidelines sentencing range was 324 to 405 months’ imprisonment. Relying on United States v. Perry, 389 F.Supp.2d 278 (D.R.I.2005), Spears argued the application of the 100:1 quantity ratio between powder cocaine and crack cocaine under the Guidelines results in a sentence substantially greater than necessary to promote the objectives of 18 U.S.C. § 3553(a). The district court agreed with Spears and adopted the rationale set forth in Perry. Then, using a 20:1 powder cocaine to crack cocaine quantity ratio, the district court granted Spears a downward variance to a total offense level of 34, which produced an advisory Guidelines range of 210 to 262 months’ imprisonment. Thereafter, the district court sentenced Spears to the statutory mandatory minimum of 240 months’ imprisonment. Both Spears and the government appeal.
II. DISCUSSION
A. Sufficiency of the Evidence
Spears first argues there is insufficient evidence to support his conviction. He asserts the witnesses’ testimonies were “highly questionable” based on their criminal backgrounds and their motivations to testify in exchange for leniency. “We review de novo the sufficiency of the evidence, examining the evidence in the light most favorable to the jury verdict and giving the verdict the benefit of all reasonable inferences.” United States v. Winter-mute, 443 F.3d 993, 1003 (8th Cir.2006) (citation omitted).
Five cooperating witnesses testified about their involvement in cocaine trafficking with Spears, including (1) obtaining cocaine from various sources and then distributing the cocaine to assorted customers, (2) cooking powder cocaine into crack cocaine, (3) pooling money to purchase larger quantities of cocaine, and (4) selling the cocaine and splitting the proceeds. The government presented the jury with Spears’s videotaped confession, wherein Spears admitted to pooling money with cooperating witnesses in order to purchase and then resell cocaine.
Sufficiency challenges based solely on the credibility of witnesses rarely, if ever, prevail. See, e.g., United States v. Espino, 317 F.3d 788, 794 (8th Cir.2003). It is within the jury’s province to resolve conflicts in the witnesses’ testimonies, evaluate their credibility, and afford their testimonies the appropriate weight. United States v. Tabor, 439 F.3d 826, 830 (8th Cir.), petition for cert. filed (May 31, 2006) (No. 06-5244); United States v. Moore, 108 F.3d 878, 881 (8th Cir.1997) (“On appeal, we do not pass upon the credibility of witnesses or the weight to be given their testimony.” (citation and internal quotation omitted)). We conclude sufficient evidence supports Spears’s conviction for conspiracy to distribute cocaine base and cocaine salt.
B. Admission of Evidence of Prior Conviction
Spears also argues the district court abused its discretion in admitting evidence of his 2000 felony conviction in Illinois for manufacture and delivery of cocaine. Spears does not deny committing the crime; rather, he contends the evidence of his prior conviction was unduly prejudicial. We disagree.
*1170 The district court is granted broad discretion in the admission of evidence under Federal Rule of Evidence 404(b). United States v. Voegtlin, 437 F.3d 741, 745 (8th Cir.), cert. denied, — U.S.-, 127 S.Ct. 368, - L.Ed.2d — (2006). We will reverse only if the evidence has no bearing on the case and was introduced solely to prove the defendant’s propensity to commit criminal acts. Id.
Evidence of prior criminal acts is not admissible to prove the defendant acted in conformity with the prior act, but it may be admissible for other purposes such as proving a defendant’s knowledge or intent. See Fed.R.Evid. 404(b). Evidence of prior criminal acts is admissible if the evidence is: “ ‘ 1) relevant to a material issue; 2) similar in kind and close in time to the crime charged; 3) proven by a preponderance of the evidence; and 4) if the potential prejudice does not substantially outweigh its probative value.’ ” Voegtlin, 437 F.3d at 745 (quoting United States v. Thomas, 398 F.3d 1058, 1062 (8th Cir.2005)).
Evidence of Spears’s prior drug conviction was relevant to show Spears’s knowledge and intent, which were essential elements of the instant offense. Admissibility also is supported because Spears’s 2000 conviction for manufacture and delivery of cocaine was similar in kind and close in time to the instant offense. To guard against potential prejudice, the district court gave a limiting instruction to the jury that the evidence of Spears’s prior conviction should be considered only on the issues of knowledge and intent. Accordingly, evidence of Spears’s prior drug crime was highly probative as to Spears’s knowledge and intent to commit the instant drug offense and outweighed any potential undue prejudice.
C. Unreasonable Sentence
The final issue before us is the government’s cross-appeal challenging the district court’s categorical rejection of the Guidelines’ 100:1 powder cocaine to crack cocaine quantity ratio and grant of a downward variance using a 20:1 quantity ratio. We review for abuse of discretion the reasonableness of a district court’s sentence, United States v. Haack, 403 F.3d 997, 1003 (8th Cir.), cert. denied, — U.S.-, 126 S.Ct. 276, 163 L.Ed.2d 246 (2005), and we review de novo its application of law, United States v. Fogg, 409 F.3d 1022, 1026 (8th Cir.2005).
1. The 100:1 Ratio, Congress, and the Sentencing Commission
The 100:1 drug-quantity ratio emerged from the Anti-Drug Abuse Act of 1986, Pub.L. No. 99-570, 100 Stat. 3207 (codified as amended at 21 U.S.C. § 841(b)) (the 1986 Act), wherein Congress established mandatory minimum sentences for persons convicted of federal drug trafficking offenses. See United States Sentencing Commission, Special Report to the Congress: Cocaine and Federal Sentencing Policy 1 (February 1995) (1995 Report), available at http://www.ussc.gov/crack/ exec.htm. The statute’s mandatory minimum penalties were triggered by the quantities and types of drugs involved. Id. at 116. The 1986 Act also initiated the criminal distinction between powder cocaine and crack cocaine and established what has become known as the 100:1 quantity ratio.[2] Id. That is, offenses involving 5 kilograms of powder cocaine and 50 grams *1171 of crack cocaine both trigger the statute’s ten-year mandatory minimum sentence. Id. Similarly, offenses involving 500 grams of powder cocaine and 5 grams of crack cocaine trigger the statute’s five-year mandatory minimum sentence. Id. Congress differentiated between the two forms of cocaine, concluding crack cocaine was more addictive and produced more health and social problems.[3] Id. at 3.
In 1987, the United States Sentencing Commission (Sentencing Commission) used equivalences of the 100:1 quantity ratio in setting Guidelines sentences for various drug quantity levels. Id.; see also U.S.S.G. § 2D1.1 cmt. n. 10. In 1988, Congress further distinguished crack cocaine in the Anti-Drug Abuse Act of 1988, which set a five-year mandatory minimum sentence for first offense simple possession of crack cocaine. 1995 Report at 1-2; see also 21 U.S.C. § 844(a).
By 1994, the federal sentencing policy for cocaine offenses was receiving extensive criticism. See 1997 Report at 1. Critics focused on the penalty differences between the two forms of cocaine and the disproportionate impact the more severe crack cocaine penalties had on African Americans. Id. The Sentencing Commission acknowledged these concerns in its February 1995 report to Congress and cited troubling findings regarding the 100:1 quantity ratio, which included: (1) African Americans were bearing the brunt of the higher sentences associated with crack cocaine offenses; (2) low-level street dealers selling crack cocaine were receiving far more severe sentences than the high-level powder cocaine suppliers, who sold the raw material used to make crack cocaine; (3) the 100:1 quantity ratio was disproportionate relative to the harms associated with the two forms of cocaine; and (4) the evils associated with the use of crack cocaine were already accounted for through other sentencing Guidelines’ enhancements, and therefore, use of the 100:1 quantity ratio might effectively result in double punishment. 1995 Report at xii-xv. The Sentencing Commission unanimously recommended changing the Guidelines’ cocaine sentencing scheme. 1997 Report at 1.
On May 1, 1995, by a vote of 4 to 3, the Sentencing Commission issued its recommendations and proposed Congress change the Guidelines by adopting a 1:1 quantity ratio at the powder cocaine level and adding enhancements for violence and other harms associated with crack cocaine. Id. The Sentencing Commission’s dissenting members believed elimination of the disparity was unwarranted because the recommended enhancements would not sufficiently account for the added harms associated with crack cocaine. Id. After conducting a hearing on the proposed changes, Congress passed legislation, Pub.L. No. 104-38, 109 Stat. 334 (Oct. 30, 1995), signed by President William Jefferson Clinton, rejecting the Sentencing Commission’s proposed changes. Id. The *1172 legislation directed the Sentencing Commission farther to consider changes to the statute and the Guidelines as they applied to cocaine trafficking and to submit new recommendations to Congress. Id. at 1-2.
In April 1997, the Sentencing Commission submitted its second report to Congress, unanimously agreeing “congressional objectives can be achieved more effectively without relying on the current federal sentencing scheme for cocaine offenses that includes the 100-to-l quantity ratio.” Id. at 9. The Sentencing Commission recommended reducing the quantity of powder cocaine while increasing the quantity of crack cocaine required to trigger the five-year mandatory minimum sentence. Id. The Sentencing Commission also recommended making the penalty for simple possession of crack cocaine the same as the penalty for simple possession of powder cocaine. Id. at 10. Congress did not act upon those recommendations.
The Sentencing Commission issued a third report to Congress in May 2002, declaring the Commission “firmly and unanimously” agreed congressional objectives could be better achieved by substantially decreasing the 100:1 quantity ratio. See United States Sentencing Commission, Report to the Congress: Cocaine and Federal Sentencing Policy 91 (May 2002) (2002 Report), available at http://www.ussc.gov/ r — congress/02crack/2002crackrpt.pdf. Therein, the Sentencing Commission recommended increasing the five-year mandatory minimum threshold quantity of crack cocaine to at least 25 grams, thus creating a powder cocaine to crack cocaine quantity ratio of 20:1. Id. at 107. Again, Congress chose not to act on the Sentencing Commission’s recommendations.
2. Judicial History
Opponents of the 100:1 quantity ratio also appealed to the judiciary, challenging the 100:1 quantity ratio on constitutional grounds. However, these challenges proved unsuccessful.[4] See generally, Unit *1173 ed States Department of Justice, Federal Cocaine Offenses: An Analysis of Crack and Powder Penalties 14-17 (March 19, 2002) (citing cases), available at http:// www.usdoj.gov/olp/cocaine.pdf.
Nearly ten years after the courts of appeals rejected various constitutional challenges to the 100:1 quantity ratio, the ratio again is being challenged pursuant to the Supreme Court’s decision in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Because Booker eliminated the mandatory application of the Guidelines and directed district courts to impose sentences in accordance with the factors set forth in 18 U.S.C. § 3553(a), Booker, 543 U.S. at 311-14, 125 S.Ct. 738, district courts have varied from the now-advisory Guidelines by substituting a ratio other than 100:1, reasoning the 100:1 quantity ratio results in a sentence “greater than necessary” to reflect the interests of 18 U.S.C. § 3553(a)(2). See, e.g., Perry, 389 F.Supp.2d at 280.
For example, Perry, upon which Spears relies, involved a post-Booker sentencing in a crack cocaine case. Id. In a published sentencing memorandum, the Perry court discussed the Sentencing Commission’s 2002 findings and recommendations, and emphasized the Sentencing Commission’s recommendation that Congress change the federal cocaine sentencing policy and reduce the drug quantity ratio to 20:1. Id. at 302-03 (citing the 2002 Report at 103, 107). Persuaded by the Sentencing Commission’s recommendations, the Perry court rejected the 100:1 quantity ratio, reasoning “the advisory Guideline range for crack cocaine based on the 100:1 ratio cannot withstand the scrutiny imposed by sentencing courts when the § 3553 factors are applied.” Id. at 307. The Perry court sentenced the defendant using a 20:1 quantity ratio, finding it made “the most sense” because it was the ratio recommended by the Sentencing Commission in the 2002 Report. Id. at 307-08.[5]
3. Spears’s Sentence
At Spears’s sentencing, Spears urged the district court to reject the 100:1 *1174 quantity ratio set forth in the Guidelines and adopt the rationale set forth in Perry. After initially calculating an advisory Guidelines range of 324 to 405 months’ imprisonment based on a total offense level of 38 and a criminal history category of IV, the district court determined it would depart from that range stating, “I find the rationale in United States v. Perry to be very persuasive ... incredibly scholarly.... I’m just going to adopt the legal rationale [of Perry] because I think it applies with full force and effect in this case.” Thereafter, the district court recalculated the advisory Guidelines range based on a 20:1 quantity ratio, and varied downward to a total offense level of 34, resulting in an advisory Guidelines range of 210 to 262 months’ imprisonment. Constrained by the statutory mandatory minimum, the district court sentenced Spears to 240 months’ imprisonment. The district court stated its sentencing decision was based solely on the Perry rationale and the other § 3553(a) factors would be considered only if the sentence was reversed on the 20:1 ratio.
On appeal, the government challenges the reasonableness of Spears’s sentence, arguing the district court erred by categorically rejecting the 100:1 quantity ratio and substituting its own ratio in calculating Spears’s sentence.
4. Current Precedent
It is well settled in this post-Booker era, a sentencing court is guided by the factors set forth in § 3553(a). On appeal, we review the sentence imposed for reasonableness. See Haack, 403 F.3d at 1002. Section 3553(a) requires the district court, in compliance with the sentencing goals, to “impose a sentence sufficient, but not greater than necessary,” by “considering the nature and seriousness of the offense, the history and characteristics of the defendant, and the need for the sentence to provide justice, deterrence, and other goals of punishment.” United States v. Pappas, 452 F.3d 767, 773 (8th Cir.2006).
We are not the first court of appeals to address whether Booker or § 3553(a), authorizes a district court to reject the 100:1 quantity ratio and substitute its own ratio in sentencing a defendant for a crack cocaine offense. The First, Second, Fourth, Seventh, and Eleventh Circuits each rejected downward variances based on this rationale, concluding “we see nothing in § 3553(a) or in Booker more generally that authorizes district courts to sentence defendants for offenses involving crack cocaine under a quantity ratio different from that provided in the Sentencing Guidelines.” United States v. Castillo, 460 F.3d 337, 361 (2d Cir.2006); see, e.g., United States v. Jointer, 457 F.3d 682, 687-88 (7th Cir.) (rejecting the district court’s substitution of its own ratio for the 100:1 ratio, concluding that although “the Sentencing Commission’s detailed reports on crack and cocaine sentencing may have ‘practical utility’ to a district court’s evaluation of the facts and circumstances of the individual case in light of the § 3553(a) factors,” such reliance will not “shield a district court from a reasonableness review on appeal because, at the core, the district court must still tie the § 3553(a) factors to the individual characteristics of the defendant and the offense committed” (footnote and citation omitted)), petition for cert. filed (U.S. Oct. 27, 2006) (No. 06-7600); United States v. Williams, 456 F.3d 1353, 1367 (11th Cir.) (“The [100:1] drug quantity ratio not only reflects Congress’s policy decision that crack offenders should be punished more severely, but also reflects its choice as to how much more severe the punishment should be. Federal courts are not at liberty to supplant this policy decision.”), petition for cert. filed (U.S. Oct. 19, 2006) (No. 06-7352); United States v. *1175 Eura, 440 F.3d 625, 633 (4th Cir.) (concluding Congress decided to treat crack cocaine offenses more severely than powder cocaine offenses and instructed sentencing courts to avoid disparate sentences among crack cocaine dealers, therefore, to allow district courts to treat crack cocaine offenses on the same plane as powder cocaine offenses would contradict “two explicit Congressional directives” and would “not promote respect for the law, provide just punishment for the offense of conviction, or result in a sentence reflective of the offense’s seriousness as deemed by Congress”), petition for cert. filed, 74 U.S.L.W. 1535 (U.S. June 20, 2006) (No. 05-11659); United States v. Pho, 433 F.3d 53, 54 (1st Cir.2006) (concluding it is inconsistent with Booker for a district court to “impose a sentence outside the advisory guideline[s] sentencing range based solely on [the district court’s] categorical rejection of the guidelines’ disparate treatment of offenses involving crack cocaine, on the one hand, and powdered cocaine, on the other hand”). The Tenth Circuit has hinted it would hold the same. See United States v. McCullough, 457 F.3d 1150, 1171-72 (10th Cir.) (concluding the district court did not err in refusing to impose a lower sentence based on the Guidelines’ 100:1 sentencing disparity between powder and crack cocaine, and intimating its agreement with Pho and Eura that “it is error for a district court to impose a sentence outside the advisory guideline range based upon its own disagreement with the crack cocaine/powder cocaine disparity”), petition for cert. filed (U.S. Nov. 8, 2006) (No. 06-7742).
As the dissent points out, the Third Circuit recently reversed the district court’s imposition of an advisory Guidelines sentence in a crack cocaine case, concluding “a sentencing court errs when it believes that it has no discretion to consider the crack/powder cocaine differential incorporated in the Guidelines — but not demanded by 21 U.S.C. § 841(b)-as simply advisory ... [in] the post—Booker sentencing process.” United States v. Gunter, 462 F.3d 237, 249 (3d Cir.2006). We disagree, however, with the dissent’s view that the Gunter court indicated “it is entirely appropriate for a district court to consider a different ratio under step three of the sentencing process.” The Gunter court, in fact, reasoned just the opposite.
Of course, the District Court is under no obligation to impose a sentence below the applicable Guidelines range solely on the basis of the crack/powder cocaine differential. Furthermore, although the issue is not before us, we do not suggest (or even hint) that the Court categorically reject the 100:1 ratio and substitute its own, as this is verboten. The limited holding here is that district courts may consider the crack/powder cocaine differential in the Guidelines as a factor, but not a mandate, in the post-Booker sentencing process.
Id. We do not adopt or endorse the Third Circuit’s opinion that the crack/powder cocaine differential in the Guidelines may be a factor in the post-Booker sentencing process.
Post-Booker, our circuit has held a sentence “within the Guidelines based on the crack-powder disparity is not inherently unreasonable.” United States v. Cawthorn, 429 F.3d 793, 802-03 (8th Cir.2005), petition for cert. filed (U.S. May 25, 2006) (No. 05-11273). In addition, two panels of our circuit intimated agreement with our sister circuits “that a district court may not reasonably impose a sentence outside the advisory range based solely on a rejection of the disparate treatment of crack and powder cocaine under the guidelines.” United States v. Brown, 453 F.3d 1024, 1027 (8th Cir.2006); see Tabor, 439 F.3d at 831. With the issue squarely before us for *1176 the first time, we now join our sister circuits in holding neither Booker nor § 3553(a) authorizes district courts to reject the 100:1 quantity ratio and use a different ratio in sentencing defendants for crack cocaine offenses.
In parting company with our sister circuits, the dissent argues (1) it would be inconsistent with Booker to require a district court to follow congressional advice or policy within an advisory system, and as long as the district court presents a reasoned decision for declining to follow congressional advice, its decision should be upheld; (2) limiting the district court’s consideration under § 3553(a) to the individual circumstances of a given case would render § 3553(a)(1) and § 3553(a)(2)(A) redundant; and (3) Booker anticipated some disparity in sentencing under an advisory-Guidelines system and only prohibited unwarranted disparities. We disagree.
First, the dissent suggests reason is the only limitation on a district court’s sentencing discretion, stating, “Booker clearly does not give district courts license to ignore congressional advice or policy by deciding, for example, ... the crack/powder cocaine ratio should be 5:1 rather than 100:1, the limitation now imposed upon district courts is reason.” Under the dissent’s rationale, a district court could adopt the 1:1 quantity ratio recommended by the Sentencing Commission in 1995, the 5:1 quantity ratio it recommended in 1997,[6] see 1997 Report at 1-2, or the 20:1 quantity ratio it recommended in 2002, see 2002 Report at 107, or any other ratio for that matter, as long as the district court makes a reasoned decision. Nothing in Booker authorizes district courts to alter the Guidelines; rather, Booker provides district courts the flexibility to tailor individual sentences for each defendant against the framework of the congressionally-approved Guidelines scheme. Booker, 543 U.S. at 264-65, 125 S.Ct. 738 (explaining the remaining features of the sentencing system will help “avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary”).
Second, the dissent opines, “ § 3553(a)(2)(A) cannot be read as limiting district courts to consideration of case-specific circumstances, because such a reading would render the case-specific instructions of § 3553(a)(1) redundant.” Yet, in the present case, the district court failed to perform a § 3553(a) analysis at all, stating, “once I made the decision I was going to vary on the [Perry] crack ratio basis, I didn’t really look at the other [§ 3553(a) factors] because to me it was a moot question. I’ll only look at that issue should this sentencing be reversed on the 20-to-l ratio.” As a result, the district court granted a downward variance, based solely on its disagreement with the congressional policy behind the 100:1 quantity ratio.[7] Although the dissent believes dis- *1177 trict courts are not limited to considering case-specific circumstances under § 3553(a), under this circuit’s precedent, a district court must, at a minimum, perform the § 3553(a) analysis. See Haack, 403 F.3d at 1002-03 (explaining the proper sentencing sequence, stating district courts should first calculate a Guidelines sentence, then grant any traditional departures, and finally consider all other factors under § 3553(a) to determine whether to impose a Guidelines or a non-Guidelines sentence); see also United States v. Claiborne, 439 F.3d 479, 481 (8th Cir.) (“When the district court varies from the guidelines range based upon its analysis of the § 3553(a) factors, we must examine whether the district court’s decision to grant a § 3553(a) variance from the appropriate guidelines range is reasonable, and whether the extent of any § 3553(a) variance ... is reasonable.” (citation and internal quota tion omitted)), cert. granted, 127 S.Ct. 551, 75 U.S.L.W. 3246 (U.S. Nov. 3, 2006) (No. 06-5618).
Third, the dissent reads the district court’s Booker discretion too broadly. Booker did not transform the function of the judicial branch or “empower[ ] judges to define penalties for categories of crimes.” Castillo, 460 F.3d at 356; see Euro, 440 F.3d at 633 (speculating about the variety of possible drug quantity ratios district courts might adopt, and concluding, “[tjhese scenarios tell us that sentencing courts should not be in the business of making legislative judgments concerning crack cocaine and powder cocaine”); Pho, 433 F.3d at 61-62 (holding, post-Booker, “a district court may exercise discretion in fashioning sentences — but that discretion was meant to operate only within the ambit of the individualized factors spelled out in section 3553(a),” and though broad, that discretion is not limitless).
Fourth, the dissent suggests that although § 3553(a)(6) instructs district courts to avoid unwarranted sentencing disparity, Booker anticipated there would be some lack of uniformity in sentences, because it is “a necessary evil of maintaining a constitutional sentencing regime.” However, reading § 3553(a)(6) as allowing district courts to use a quantity ratio other than 100:1 trumps the 100:1 quantity ratio Congress built into 21 U.S.C. § 841(b). As the Second Circuit recently observed:
Just as with any statute, the role of the judiciary is to determine what Congress meant by this statutory phrase. We have no authority to substitute our policy preferences for that of the legislative branch. Rather, our interpretation must be faithful to Congress’s meaning as embedded in the words of its statute. While the 100:1 ratio clearly produces a disparity, it is one that Congress has mandated, one that Congress has continually refused to alter, despite the Sentencing Commission’s various proposals for eliminating or reducing the ratio.... Moreover, § 3553(a)(6) cautions against unwarranted disparities only to the extent that they stem from different sentences given to “defendants with similar records who have been found guilty of similar conduct,” and Congress has time and again clarified that in its view crack and powder cocaine offenses are not “similar conduct.” No amount of citation to the Sentencing Commission’s reports that are critical of the differential treatment of crack and powder cocaine can hide that fact, and in the end, we are constrained by the public policy choice Congress has made.
Castillo, 460 F.3d at 357 (citation omitted).
A judge’s personal views regarding the Sentencing Commission’s recommenda *1178 tions cannot supplant Congress’s refusal to adopt those recommendations. In the twenty years since codifying the 1986 Drug Abuse Act, Congress has elected not to revise the 100:1 quantity disparity between powder cocaine and crack cocaine. The reason for this inaction, whether due to a political stalemate or other legislative grounds, is irrelevant to our inquiry. Our court, as an unelected body, cannot impose its sentencing policy views and dismiss the views of the peoples’ elected representatives. The judiciary must defer to Congress on sentencing policy issues.
Here, the district court did not vary from the advisory Guidelines range based on an individualized, case-specific evaluation of the facts or of the defendant. Rather, based on the district court’s categorical rejection of congressional policy, the court impermissibly varied by replacing the 100:1 quantity ratio inherent in the advisory Guidelines range with a 20:1 quantity ratio. The district court erred by failing to make a proper analysis under § 3553(a) and by granting a downward variance based solely on its rejection of the 100:1 quantity ratio.
III. CONCLUSION
We affirm Spears’s conviction, and we reverse his sentence and remand to the district court for resentencing consistent with this opinion.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. The 100:1 ratio relates to the relative quantities of powder cocaine and crack cocaine required to trigger similar penalties and not the length of the sentence imposed. Nonetheless, the 100:1 ratio is often referred to as a "sentencing ratio.”

. The dangers associated with crack cocaine include (1) crack cocaine’s association with violent street crimes — gangs, guns, serious injury, and death; (2) crack cocaine's relative low-cost and widespread availability, making it accessible to the most vulnerable members of society; and (3) crack cocaine being more addictive because it is smoked, producing a more intense psychological and psychotropic effect than powder cocaine, which is snorted. United States Sentencing Commission, Special Report to the Congress: Cocaine and Federal Sentencing Policy 3-4 (April 1997) (1997 Report), available at http://www.ussc. gov/r — congress/newcrack.pdf.
Crack cocaine is not the only illicit drug Congress assigned a low quantity threshold sentencing trigger. For example, five grams of methamphetamine and one gram of LSD trigger the same five-year mandatory minimum sentence as do five grams of crack cocaine. See 21 U.S.C. § 841(b)(l)(B)(iii)-(viii).

. For example, in United States v. Lewis, 90 F.3d 302, 306 (8th Cir.1996), our circuit rejected an equal protection challenge, which was based on the Sentencing Commission’s 1995 recommendations to eliminate the 100:1 quantity ratio due to its disparate impact on African-American defendants, holding, ’’[i]t is not for us to decide whether the 100:1 ratio is wise or equitable; that is a question for the popularly chosen branches of government.” The other circuits reached similar conclusions. See United States v. Gaines, 122 F.3d 324, 329-30 (6th Cir.1997) (concluding "Congress did not grant the courts broad discretion to apply the sentencing ratio of their choosing based on alleged injustices inherent in the 100:1 ratio,” and despite the Sentencing Commissions recommendations to eliminate the quantity ratio, ”[w]hen Congress and the Sentencing Commission disagree on matters of sentencing policy, Congress trumps”); United States v. Berger, 103 F.3d 67, 71 (9th Cir.1996) (agreeing with other courts of appeals in declining to sentence the defendant under powder cocaine rather than crack cocaine penalties under the rule of lenity, con-eluding a district court may not "override the express intention of Congress regarding penalties for crack cocaine and powder cocaine” because ”[i]t is not the province of this Court to second-guess Congress’s chosen penalty”) (citations and internal quotations omitted); United States v. Butler, 102 F.3d 1191, 1194—95 (11th Cir.1997) (rejecting an equal protection challenge based on the disparate impact of the 100:1 quantity ratio); United States v. Fonts, 95 F.3d 372, 374 (5th Cir.1996) (per curiam) (joining other circuits in rejecting “the notion that a district court may override the express intention of Congress regarding penalties for crack cocaine and powder cocaine under either 18 U.S.C. § 3553(b) or [U.S.S.G.] § 5K2.0”); United States v. Teague, 93 F.3d 81, 84—85 (2d Cir.1996) (rejecting an equal protection challenge to the disparate impact of the 100:1 quantity ratio between blacks and whites, concluding there was no evidence "Congress reaffirmed the sentencing disparity at least in part 'because of,' not merely 'in spite of,' its adverse effects upon blacks” (internal quotation omitted)); United *1173 States v. Hayden, 85 F.3d 153, 157-58 (4th Cir.1996) (rejecting a constitutional challenge to the 100:1 quantity ratio based on Fourth Circuit precedent, and noting "Congress rejected the Sentencing Commission's [1995] report and recommendation and refused to change the disparity in crack cocaine versus powder cocaine sentences”); United States v. Anderson, 82 F.3d 436, 440-42 (D.C.Cir.1996) (rejecting the proposition the crack/powder disparity can serve as a valid basis for downward departure); United States v. Sanchez, 81 F.3d 9, 11 (1st Cir.1996) (affirming the district court’s denial of a downward departure based on the Sentencing Commissions's 1995 report and recommendations, and concluding "we cannot blind our eyes to the fact that the Congress shot down the Commission’s recommendation [to eliminate the 100:1 ratio]”); United States v. Alton, 60 F.3d 1065, 1071 (3d Cir.1995) (reversing the district court’s downward departure based on the disparate impact of the 100:1 quantity ratio, and reasoning "[w]e defer to Congress and the Sentencing Commission to address the related policy issues and to consider the wisdom of retaining the present sentencing scheme”); United States v. Jones, 54 F.3d 1285, 1293-94 (7th Cir.1995) (rejecting defendant’s challenge that the disparity in sentencing between crack cocaine and powder cocaine offenses disproportionately impacts African-Americans and violates due process, concluding Congress did not act with a discriminatory intent when it allowed the Guidelines disparate sentencing scheme); United States v. Robertson, 45 F.3d 1423, 1445-46 (10th Cir.1995) (rejecting defendant’s challenge that the distinction between crack cocaine and powder cocaine offenses "violate equal protection of the laws and constitute cruel and unusual punishment”).

. The government voluntarily withdrew an appeal in the Perry case; however, the First Circuit rejected similar reasoning in United States v. Pho, 433 F.3d 53, 54-57 (1st Cir.2006), abrogating Perry.

. The Sentencing Commission’s 1997 Report recommended lowering the quantity of powder cocaine and raising the crack cocaine quantity required to trigger the mandatory minimum sentence, which would produce a 5:1 quantity ratio between powder cocaine and crack cocaine. 1997 Report at 9.

. Regarding the district court’s § 3553(a) analysis, the dissent concludes, "the district court had a well-reasoned basis for concluding the use of the 20:1 ratio was appropriate to achieve a sentence ‘sufficient, but not greater than necessary,' ” because the "district court adopted as its own the decision in Perry, which in turn contains a well-reasoned discussion and summary of the [2002 Report].” It is counterintuitive to find the district court satisfied the individualized, case-specific evaluation required under § 3553(a) for Spears, by simply adopting, as the sole basis for imposing a sentence, the legal rationale used by another sentencing court in an entirely unrelated case. Furthermore, reli- *1177 anee on Perry is misplaced, because Perry has been abrogated by Pho, 433 F.3d at 54.