# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 05-4468/06-1354

_____

United States of America,                    *
                                        *
        Appellee/Cross-Appellant,   *
                                          *

    v.                                      *
                                        *

Steven Spears,                      *
                                        *
        Appellant/Cross-Appellee.   *
                                        *  On remand for reconsideration

_____       *  from the United States Supreme
                                        *  Court.

American Civil Liberties Union    *
Foundation Drug Law Reform Project; *
American Civil Liberties Union of   *
Iowa; Douglas A. Berman; Michael M. *
O'Hear; David N. Yellen; David M.  *
Zlotnick; Federal Public Defender of  *
Iowa,                                *
                                        *
        Amici on Behalf of        *
        Appellant/Cross-Appellee.  *

_____

Submitted: February 13, 2008
Filed: June 23, 2008

_____

Before LOKEN, Chief Judge, WOLLMAN, MURPHY, BYE, RILEY, MELLOY, SMITH, COLLOTON, GRUENDER, BENTON, and SHEPHERD, Circuit Judges, en banc.

_____

RILEY, Circuit Judge.

After our earlier decision in this matter, United States v. Spears, 469 F.3d 1166 (8th Cir. 2006) (en banc) (Spears I), the United States Supreme Court vacated and remanded the case for reconsideration in light of Kimbrough v. United States, 552 U.S. ___, 128 S. Ct. 558, ___ L.Ed.2d ___ (2007). See Spears v. United States, 128 S. Ct. 858 (Jan. 7, 2008). Upon reconsideration, we vacate Section II(C) of Spears I, and we reinstate the background and remainder of the Spears I analysis. Based upon the clarifications outlined below, we again reverse and remand for resentencing.

## I.    DISCUSSION
### A.    Clarification

In Spears I, we discussed recent precedent in which the Third Circuit concluded "district courts may consider the crack/powder cocaine differential in the Guidelines as a factor, but not a mandate, in the post-Booker[1] sentencing process." See Spears I, 469 F.3d at 1175 (quoting United States v. Gunter, 462 F.3d 237, 249 (3d Cir. 2006). We expressly declined either to adopt or endorse the Third Circuit's determination. See id. According to Kimbrough, our dicta was wrong.

In light of Kimbrough, we now expressly adopt the determination that, "under Booker, the cocaine Guidelines, like all other Guidelines, are advisory only . . . ." Kimbrough, 128 S. Ct. at 564. "A district judge must include the Guidelines range in the array of factors warranting consideration. The judge may determine, however, that, in the particular case, a within-Guidelines sentence is 'greater than necessary' to

_____

[1]United States v. Booker, 543 U.S. 220 (2005).

-2-

serve the objectives of sentencing." Id. (citing 18 U.S.C. § 3553(a) (2000 ed. and Supp. V)). The Supreme Court therefore concluded, "In making that determination, the judge may consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses." Id.

### B. Underlying Holding

In Spears's case, we did not need either to adopt or endorse the proposition outlined in Gunter and now Kimbrough because the district court did not just "consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses," Kimbrough, 128 S. Ct. at 564, in conjunction with a proper § 3553(a) analysis. Rather, the district court substituted its own ratio, and did not conduct any additional analysis under § 3553(a). The district court declared:

> [O]nce I made the decision I was going to vary on the [United States v. Perry, 389 F.Supp.2d 278 (D. R.I. 2005)] crack ratio basis, I didn't really look at the other § 3553(a) factors because to me it was a moot question. I'll only look at that issue should this sentencing be reversed on the 20-to-1 ratio.

Spears I, 469 F.3d at 1176 (internal alteration omitted). The district court therefore "impermissibly varied by *replacing* the 100:1 quantity ratio inherent in the advisory Guidelines range with a 20:1 quantity ratio." Id. at 1178 (emphasis added). Additionally, "the district court did not vary from the advisory Guidelines range based on an individualized, case-specific evaluation of the facts or of the defendant." Id. In considering the overall goals of sentencing under § 3553(a) and conducting an *individualized assessment* based upon the particular circumstances of a defendant's case, a district court may determine the 100:1 quantity ratio results in a harsher sentence than necessary. See Kimbrough, 128 S. Ct. at 575. However, the district court may not categorically reject the ratio set forth by the Guidelines.

This determination is directly in line with the Third Circuit's reasoning in Gunter, where the court explained, "we do not suggest (or even hint) that the Court *categorically reject* the 100:1 ratio and *substitute its own*, as this is *verboten*." Gunter, 462 F.3d at 249 (emphasis added). Nothing in Kimbrough suggests the district court may substitute its own ratio for the ratio set forth in the Guidelines. Indeed, the Supreme Court in Kimbrough explained "the court did not purport to establish a ratio of its own." Kimbrough, 128 S. Ct. at 575.

## II.    CONCLUSION

We again affirm Spears's conviction, and reverse Spears's sentence and remand for resentencing consistent with this opinion.


MURPHY, Circuit Judge, concurring.


The Congressional sentencing ratio between powder and crack cocaine offenses was incorporated into the sentencing guidelines by the first United States Sentencing Commission. Although the Commission recently made some adjustments for crack sentences in its 2007 amendments by reducing base offense levels, the underlying guideline ratio between powder and crack remains the same. As an author[2] of the 2002 Commission report to Congress that recommended reducing the disparity in cocaine sentencing, I am aware of the large amount of evidence cited there which undercut any continued validity for the policy reasons on which the disparate ratio was originally based. In its decision in Kimbrough, the Supreme Court cited the Commission's report and authorized sentencing judges to vary downward from the advisory guidelines in crack cases on the basis of unwarranted disparity. 128 S.Ct. at 566-69. Since the Court's opinion in Kimbrough dealt only with guideline sentencing (as did its other recent sentencing decisions in United States v. Booker, 543 U.S. 220

---

[2]Chair of the United States Sentencing Commission, 1999-2004.

-4-

(2005), and <u>Gall v. United States</u>, 128 S.Ct. 586 (2007)), the much criticized ratio remains in place for all sentences affected by statutory mandatory minimums.

Sentencing courts are faced with a dilemma in trying to fashion fair and equitable sentences which are appropriate for the individual defendant, but which do not create unwarranted disparities with sentences for other defendants and other courts. <u>See</u> 18 U.S.C. § 3553(a)(6). Today's decision of our divided court reflects that dilemma with thoughtful opinions on both sides of the issue, but a satisfactory solution to the perceived unfairness of the great disparity in powder and crack sentencing can only be accomplished by Congress. Only Congress has the power to alter the cocaine sentencing ratio in the statutes which in turn affects the advisory guidelines. Although legislative proposals for change have been introduced, Congress has not yet been willing to act for change.

One of the most basic principles of the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 et seq., and a major reason for its bipartisan support was to reduce sentencing disparity, to ensure that each federal judge would not set his or her own individual sentencing policy. <u>See</u> S. Rep. No. 98-225, at 41-46 (1983); <u>see also</u> <u>United States v. Mickelson</u>, 433 F.3d 1050, 1053-55 (8th Cir. 2006) (discussing reduction of sentencing disparity as rationale for Sentencing Reform Act). The approach advocated by the dissent would have just such a consequence of increasing sentencing disparity, with the potential for each judge to develop his or her cocaine policy ratio with dramatically different results within and between districts.

The Supreme Court counseled in <u>Kimbrough</u> that a sentencing court should not operate in a vacuum and "must take account of sentencing practices in other courts," 128 S.Ct. at 574, and that it should also consider the disparate impact of the statutory mandatory minimums as it weighs the "§ 3553(a) factors and any unwarranted disparity created by the crack/powder ratio itself." <u>Id.</u> Rather than suggesting that a sentencing judge may develop his or her own policy ratio for the range of cocaine

cases as the dissent proposes, in <u>Kimbrough</u> the Court approved a sentencing approach based on the "particular circumstances" of the defendant's case. <u>Id.</u> at 576.

The first step for the sentencing court in cocaine cases still is "properly calculating and considering the advisory Guidelines range"; after that the court should proceed to consider the individual circumstances of the crime and the defendant with reference to the § 3553(a) factors. <u>Id.</u> at 575. Recognizing the unfairness that the 100 to 1 ratio can have, the Court authorized district judges "to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes." <u>Id.</u> The Court did not, however, authorize district judges to develop their own policy ratio to be applied in every cocaine case. In fact, the Court approvingly noted that the district court it was reviewing

> did not purport to establish a ratio of its own. Rather, it appropriately framed its final determination in line with § 3553(a)'s overarching instruction to impose a sentence sufficient, but not greater than necessary [. . .] to do justice <u>in this case</u>.

<u>Id.</u> (quotation omitted) (emphasis added). The role of the sentencing judge is not the same as that of a legislative policymaker. The sentencing focus must be on the "particular defendant" rather than on a whole category of cases. <u>See id.</u>

For these reasons, I concur in Judge Riley's opinion. Perhaps the specter of myriad cocaine sentencing policies with uneven results across the country will move Congress to renew its interest in this critical subject which affects people's lives in a way many perceive to be inequitable and unjust.

COLLOTON, Circuit Judge, with whom WOLLMAN, BYE, MELLOY and SMITH, Circuit Judges, join, dissenting.

In *Kimbrough v. United States*, 128 S. Ct. 558 (2007), the Supreme Court declared that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, *even in a mine-run case.*" *Id.* at 575 (emphasis added). The Court thus established that even when a particular defendant in a crack cocaine case presents no special mitigating circumstances – no outstanding service to country or community, no unusually disadvantaged childhood, no overstated criminal history score, no post-offense rehabilitation – a sentencing court may nonetheless vary downward from the advisory guideline range. The court may do so based solely on its view that the 100-to-1 ratio embodied in the sentencing guidelines for the treatment of crack cocaine versus powder cocaine creates "an unwarranted disparity within the meaning of § 3553(a)," 128 S. Ct. at 575, and is "at odds with § 3553(a)." *Id.* at 576. The only fact necessary to justify such a variance is the sentencing court's disagreement with the guidelines – its policy view that the 100-to-1 ratio creates an unwarranted disparity.[3]

---

[3]Effective November 1, 2007, an amendment to the guidelines reduced the base offense level associated with each quantity of crack by two levels, thus resulting in a reduced crack/powder ratio that varies by quantity. The Supreme Court described this as a "modest amendment," observed that the amended guidelines "still produce sentencing ranges keyed to the mandatory minimums" from the Anti-Drug Abuse Act of 1986, and quoted the Sentencing Commission's view that it is "'only . . . a partial remedy' for the problems generated by the crack/powder disparity," with a "comprehensive solution" attainable only through "appropriate legislative action by Congress." *Kimbrough*, 128 S. Ct. at 569 & n.10. It seems unlikely, therefore, that the Court would view the amended crack cocaine guideline as exemplifying "the Commission's exercise of its characteristic institutional role," such that "closer review" of a sentencing judge's decision to vary from the amended guideline "may be in order." *Id.* at 575; *cf. id.* at 576-77 (Scalia, J., concurring).

-7-

This appeal presents the question whether a district court, in varying from the advisory guidelines because the 100-to-1 ratio results in a sentence that is "greater than necessary," may determine the extent of the variance by reference to the sentencing range that would apply if the guidelines used a different crack/powder ratio – in this case, 20-to-1. Our court today says that a district court may not do so. There is at least superficial appeal to this conclusion, based largely on two passages in *Kimbrough*. The district court in that case, the Court observed, "did not purport to establish a ratio of its own," and "homed in on the particular circumstances of Kimbrough's case." 128 S. Ct. at 575. But *Kimbrough* juxtaposed a sentencing court that "purport[s] to establish a ratio of its own" with a court that "appropriately frame[s] its final determination in line with § 3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary' to accomplish the sentencing goals advanced in § 3553(a)(2)." *Id.* The Supreme Court did not hold that a district court is forbidden to consider an alternative crack/powder ratio *as a means of determining* what sentence is "sufficient, but not greater than necessary" to comply with the purposes of § 3553(a)(2); that question was not presented. On reflection, I cannot identify anything about a sentencing court's consideration of an alternative ratio for that purpose that conflicts with § 3553(a) or with the Court's remedial guidance in the wake of *United States v. Booker*, 543 U.S. 220 (2005). To the contrary, permitting a sentencing court to proceed in this fashion promotes the statutory purposes of honesty, uniformity, and transparency in sentencing.

There can be no doubt that the district court acted within its discretion by granting a downward variance based on its view that the 100-to-1 ratio resulted in a sentence greater than necessary to achieve the purposes of § 3553(a). *Kimbrough* says this is allowed, even in a mine-run case. Nor, given the impermissibility of proportionality review after *Gall v. United States*, 128 S. Ct. 586 (2007), is there serious doubt that the district court's considerable discretion would allow it to impose a sentence of 240 months in this case, if it merely announced its view that a variance of that degree was necessary to account for disparity caused by the 100-to-1

crack/powder ratio.  The remaining question is whether the court impermissibly relied on the advisory range that would be indicated by a 20-to-1 crack/powder ratio as the *specific justification* for *the extent* of the variance.  The court says this is "*verboten*," but never really explains why this approach conflicts with § 3553(a) or the Sentencing Reform Act.  I believe the better view is that the statutory purposes of "honesty," "uniformity," *see Booker*, 543 U.S. at 264, and transparency, *see Rita v. United States*, 127 S. Ct. 2456, 2468-69 (2007), are actually furthered by the district court's approach and frustrated by the court's contrary rule.

If a district court is not permitted to make its decision about the extent of a variance by reference to a different crack/powder ratio, then how should the court proceed?  *Rita* says a sentencing court should articulate reasons for its decision, so that reviewing courts and the public are assured that the sentencing process is a "reasoned process."  *Id.* at 2469.  The district court's explanation for varying to the degree indicated by a 20-to-1 ratio surely is a reasoned basis for selecting the final sentence in this case.  Everyone can understand how and why the court arrived at the extent of the variance.  The district court, incorporating *United States v. Perry*, 389 F. Supp. 2d 278, 301-03 (D.R.I. 2005), *see* S. Tr. 32, relied on the same studies and criticisms of the 100-to-1 ratio discussed favorably in *Kimbrough*, including the 2002 Sentencing Commission report that recommended a 20-to-1 ratio.  *See Kimbrough*, 128 S. Ct. at 568-69, 575-76 ("[T]he [district] court alluded to the Sentencing Commission's reports criticizing the 100-to-1 ratio," and "properly . . . accorded weight to the Sentencing Commission's consistent and emphatic position that the crack/powder disparity is at odds with § 3553(a).").  How is the sentencing process improved if the court is forbidden to rely consistently on the detailed analysis of the Sentencing Commission to determine the magnitude of a variance?  The goal of a reasoned sentencing process is not advanced by requiring a sentencing court instead to make a seat-of-the-pants judgment in each mine-run case about how much to vary from the advisory guidelines based solely on the "crack/powder disparity."  *Id*. at 575.

Our court's decision also seems likely to undermine the Sentencing Reform Act's interest in uniformity. To be sure, the decisions in *Booker*, *Kimbrough*, and *Gall* make it less likely that the system will achieve one type of uniformity sought by Congress: similar sentences for defendants with similar offense conduct and similar criminal histories who are sentenced in different courts. Some judges now will elect to vary from the advisory guidelines on crack cocaine, *e.g.*, *United States v. McGhee*, 512 F.3d 1050, 1051 (8th Cir. 2008) (per curiam), while others will apply the ratios in the advisory guidelines, *e.g.*, *United States v. Moore*, 518 F.3d 577, 580 (8th Cir. 2008), and the deferential appellate review described in *Gall* and *Kimbrough* will not iron out these differences. *See Booker*, 543 U.S. at 263 ("We cannot and do not claim that use of a 'reasonableness' standard will provide the uniformity that Congress originally sought to secure.").[4] But there is still an interest in uniform treatment of similarly-situated defendants *by the same sentencing judge*. If a particular judge sentences numerous defendants in mine-run crack cocaine cases, and if that judge holds the policy view that the crack/powder disparity yields a sentence greater than

---

[4]I fully agree with Judge Murphy's observation that "one of the most basic principles of the Sentencing Reform Act of 1984" was that each individual judge would not set his or her own sentencing policy. *Ante*, at 5 (concurring opinion); *see United States v. Maloney*, 466 F.3d 663, 669 (8th Cir. 2006) (observing that "approval of the district court's analysis in this case, and the degree of variance adopted, has great potential to result in excessive sentencing disparities, as other district judges apply their own personal sentencing philosophies"). But it is not "the approach advocated by [this] dissent" that would permit each judge to set "his or her own individual sentencing policy" in cocaine cases, and have the "consequence of increasing sentencing disparity." *Ante*, at 5. As our court's post-*Kimbrough* decisions already illustrate, *it is the decision in Kimbrough itself that will have that effect*. This dissent simply acknowledges the reality that *Kimbrough* permits district judges to apply their individual policy views in cocaine sentencing, *see* 128 S. Ct. at 570 (quoting the government's concession that "courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines"), and declines to prohibit judges from selecting one reasonable way of applying those views.

-10-

necessary to achieve the purposes of § 3553(a) in a mine-run case, *see Kimbrough*, 128 S. Ct. at 575, then the sentencing judge may well (and hopefully would) desire to treat each defendant the same in that respect. The judge should be permitted to use a consistent methodology to achieve a consistent degree of variance in similar cases.[5]

The decision in this case places the conscientious sentencing judge in a quandary. If the opinion means that a court may not even *consider* the guideline range that would result from an alternative crack/powder ratio, then the sentencing judge who wishes to vary from the guidelines based on the crack/powder differential is deprived of a reliable and analytically rigorous means to ensure similar sentences for similar defendants in the same court. If, on the other hand, the opinion permits the court to consider the result that would be derived from an alternative crack/powder ratio so long as the judge does not *expressly rely on it*, then the sentencing court must refrain from providing a complete explanation for its sentence or, worse, engage in subterfuge when setting forth its rationale. A system that encourages this sort of behavior is at odds with the goal of the Sentencing Reform Act to promote honesty in sentencing.

Allowing sentencing courts to rely on the range indicated by an alternative crack/powder ratio also helps the sentencing process to evolve. *See Rita*, 127 S. Ct. at 2469. *Booker*, *Gall*, and *Kimbrough* have resulted in a sentencing system that differs significantly from the system enacted by Congress. The statutes established mandatory sentencing guidelines and *de novo* appellate review of many departures,

_____

[5]*Kimbrough* suggests that a sentencing court should consider arguments from the government that the crack/powder ratio should be evaluated differently in a particular case because of "sentencing practices in other courts" or "'cliffs' resulting from statutory minimum sentences." *See* 128 S. Ct. at 574. As a procedural matter, the government raised no such argument in this case, *see* S. Tr. 24-26, and, as a matter of substantive reasonableness, the Supreme Court did not indicate whether or to what extent these considerations *must* override uniform treatment of crack cocaine defendants by a particular sentencing judge.

with basic policy decisions made largely by the Sentencing Commission rather than individual sentencing courts. The Court's post-*Booker* remedial direction provides for advisory sentencing guidelines and deferential abuse-of-discretion review of departures and variances, thus transferring a good measure of authority to the individual sentencing courts. As a consequence, Congress will be faced with choices in the future about whether to retain the new system or to legislate a different system that more closely approximates the former statutory plan. *See Booker*, 543 U.S. at 265 ("The ball now lies in Congress' court. The National Legislature is equipped to devise and install, long term, the sentencing system, compatible with the Constitution, that Congress judges best for the federal system of justice."); *Gall*, 128 S. Ct. at 603 (Souter, J., concurring) ("After *Booker*'s remedial holding, I continue to think that the best resolution of the tension between substantial consistency throughout the system and the right of jury trial would be a new Act of Congress: reestablishing a system of statutory mandatory sentencing guidelines (though not identical to the original in all points of detail), but providing for jury findings of all facts necessary to set the upper range of sentencing discretion.").

The ability of Congress (and the Sentencing Commission) to evaluate the system in place after *Booker*, *Gall*, and *Kimbrough* will be enhanced if sentencing courts are permitted to articulate and apply consistent methodologies to justify their variances from the advisory guidelines. Congress should know if some district judges decline to vary from the 100-to-1 ratio (or from the ratios set forth in the guidelines as amended in November 2007), while others vary in mine-run cases, based solely on the crack/powder differential, to sentences consistent with, say, a 20-to-1 ratio, a 5-to-1 ratio, or a 1-to-1 ratio. This information would help Congress to make an enlightened decision about how to respond to post-*Booker* sentencing practices. The Sentencing Commission would benefit from that information as it considers whether to modify the advisory guidelines in response to the sentencing practices of individual judges. *See Rita*, 127 S. Ct. at 2469. The system works best if the process is

transparent. There is reason to believe, however, that our court's decision will serve merely to obfuscate the sentencing process without changing the result in any case.

In opposition to these points, the majority says that the sentencing judge may not "categorically" reject the 100-to-1 ratio, *ante*, at 3, and the concurring opinion suggests that the judge here acted as a "legislative policymaker" rather than as a sentencing judge. *Ante*, at 6. But the district court did not purport to act as Congress or even a "junior-varsity Congress." The judge did not fashion a rule that must be followed by any other judge. He did not bind even himself to apply the same view of the crack/powder ratio in future cases – although for the reasons stated, it may be quite sensible for a judge to act consistently in that respect. We have before us only one sentencing decision in one case involving one defendant. The objection to "categorical" decisionmaking or "legislative policymak[ing]," therefore, seems to echo the argument of the government that was *rejected* in *Kimbrough* – namely, that a district court "may vary from the 100-to-1 ratio if it does so based on the individualized circumstances of a particular case," but that a court "may not give any weight to its own view that the ratio itself is inconsistent with the § 3553(a) factors." 128 S. Ct. at 570 n.13 (internal quotation omitted). *Kimbrough* settled that a judge may give weight to his or her own policy views in crack cocaine cases, and while this would have been impermissible under the mandatory guidelines before *Booker*, it is not inherently inconsistent with the judicial role. "[S]entencing is a field in which the Judicial Branch long has exercised substantive or political judgment," *Mistretta v. United States*, 488 U.S. 361, 396 (1989), and for more than a century prior to the Sentencing Reform Act, individual sentencing judges made the same sort of policy judgment that is embodied in the district court's decision in this case.

Finally, to the extent the court holds that the district court committed procedural error within the meaning of *Gall*, 128 S. Ct. at 597, I respectfully disagree. The district court began by accurately determining the advisory guideline range, applying the 100-to-1 crack/powder ratio set forth in the guidelines. S. Tr. 22; *see United*

-13-

*States v. Spears*, 469 F.3d 1166, 1174 (8th Cir. 2006) (en banc). The court considered all arguments from the government for traditional upward departures under the guidelines or for a sentence greater than the advisory range based on § 3553(a). *See Gall*, 128 S. Ct. at 596. Indeed, the court even granted an *upward* departure based on its view that Spears's criminal history score under-represented the severity of his criminal history. S. Tr. 21-22. The court then considered arguments from Spears, based on § 3553(a), for a more lenient sentence than recommended by the advisory guidelines. Incorporating the rationale of *United States v. Perry*, the district court concluded, consistent with *Kimbrough*, that the advisory guideline range for Spears resulted in a sentence "greater than required to reflect the purposes of sentencing as outlined in § 3553(a)," due to the "Guideline disparity" in the treatment of powder cocaine and crack cocaine. *Perry*, 389 F. Supp. 2d at 308; *see Kimbrough*, 128 S. Ct. at 575.

In determining how much "greater than necessary" was the advisory sentence, the court calculated what the advisory range would be if the guidelines applied a 20-to-1 crack/powder ratio, as suggested by the Sentencing Commission in its 2002 report. *See Perry*, 389 F. Supp. 2d at 308 ("[T]he Court believes a 20:1 ratio effectively meets the criteria of § 3553 and the objectives of sentencing policy. . . . This conclusion is supported by the findings and recommendations of the Sentencing Commission . . . ."). This analysis led the district court to vary downward from the advisory range of 324 to 405 months' imprisonment to the statutory minimum sentence of 240 months' imprisonment. The government suggested no "individualized" reason that this degree of variance was inappropriate for Spears. Rather, it advanced essentially the same argument rejected in *Kimbrough*. *See* S. Tr. 25 (discussing *United States v. Tabor*, 365 F. Supp. 2d 1052, 1058-61 (D. Neb. 2005), *aff'd*, 439 F.2d 826 (8th Cir. 2006), *vacated*, 128 S. Ct. 1060 (2008)). Because the sentencing court concluded that accounting for a disparity in sentencing caused by the 100-to-1 ratio required a variance down to the statutory minimum, the court found it unnecessary to decide whether there was merit to other arguments advanced by Spears

for downward variances based on other § 3553(a) factors. S. Tr. 26-28. The district court did not, as the court implies, *ante*, at 3, ignore other factors in § 3553(a) that might have affected the sentence. It simply declined to resolve questions unnecessary to the final sentencing decision, a practice that we have not heretofore condemned as inconsistent with *Booker* or § 3553(a).

For these reasons, I would affirm the judgment of the district court.

_____