# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2169

_____

United States of America,         *
           *
    Plaintiff - Appellee,    *
           *  Appeal from the United States
    v.            *  District Court for the
           *  District of Nebraska.
David Tabor, also known as Country,  *
also known as Big Country,    *
           *
    Defendant - Appellant.    *

_____

Submitted: October 13, 2005
Filed: March 3, 2006

_____

Before RILEY, JOHN R. GIBSON, and COLLOTON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

After a jury trial, David Tabor was convicted of conspiracy to distribute and possess with intent to distribute fifty grams or more of a mixture or substance containing cocaine base (crack cocaine) in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1), and 846. The district court[1] found him responsible for at least one kilogram of cocaine base and sentenced him to 200 months imprisonment with five years of supervised release. On appeal, Tabor argues that the evidence was

_____

[1] The Honorable Richard G. Kopf, then Chief Judge of the United States District Court for the District of Nebraska.

insufficient to support his conviction; that the district court erred in its drug quantity determination; and that the district court erred in giving weight to the Sentencing Guidelines for crack cocaine. We affirm.

I.

Tabor was indicted with a co-defendant, Eric Casillas. Casillas reached a plea agreement with the government, but Tabor pled not guilty and his case proceeded to trial. At trial, the government presented seven cooperating witnesses who testified as to a number of large-scale cocaine transactions involving Tabor, who lived in Kansas City, and Schuyler Tafoya, a crack cocaine dealer in Lincoln, Nebraska.

Casillas, testifying pursuant to his plea agreement, stated that in the spring and summer of 2000 he traveled monthly from Lincoln to Kansas City with Tafoya in order to obtain cocaine. Tafoya introduced him to Tabor on one of these trips, and subsequently Tafoya arranged for Casillas to travel to Kansas City in order to pick up cocaine from Tabor. On two of these trips, Tabor fronted Casillas an ounce of cocaine, for which Tafoya later paid Tabor. Casillas testified that Tafoya visited Tabor in Kansas City several other times without Casillas and, after two of those trips, he saw Tafoya with two to three ounces of powder or crack cocaine. Casillas also testified that he saw Tabor in possession of an ounce of crack cocaine on two occasions while Tabor was in Lincoln.

LaSalle Prewitt, who also testified pursuant to a plea agreement, stated that in early 2000, Tafoya made four trips to Kansas City to buy crack cocaine from him and, on two of the trips, Tafoya brought Tabor along with him. On each of those trips, Prewitt saw Tabor give money to Tafoya, which Tafoya then used to buy nine ounces of crack cocaine for $6,000. Tafoya used Prewitt's scale to divide up the cocaine with Tabor and Gailyn Bass, who was present at one of the purchases.

Three other cooperating witnesses also testified to either witnessing or being involved in cocaine transactions with Tabor. Arrmon Daugherty testified that he saw Tabor in possession of crack cocaine twice in Lincoln and that on two occasions he purchased an ounce of crack cocaine from Tabor for $1,000. Kevin Mallory testified that he once saw Tabor give Tafoya two ounces of crack cocaine when they were all gathered at Tafoya's house in Lincoln. Richard Morey testified that he bought crack cocaine from Tabor regularly and that on one occasion Tafoya and Tabor employed him to cook ten ounces of powder into crack.

Sergeant Michael Garnett, a supervisor in the narcotics unit in Lincoln, testified that, based on his experience, purchases and sales of an eighth of an ounce or more of cocaine indicate that "at least a good share of that is to be for resale." The government used this testimony in closing to argue that the amount of cocaine in these transactions indicated that Tabor was a large-scale drug dealer.

The jury found Tabor guilty of conspiracy to distribute fifty grams or more of cocaine base. Before sentencing, the district court asked the parties to brief the issue of what weight it should give the crack cocaine Guidelines for sentencing purposes. At the sentencing hearing, the district court determined that Tabor was responsible for at least one kilogram (35 ounces) of crack cocaine and that the base offense level under the advisory Guidelines was 36. Tabor's criminal history category was I, resulting in a sentencing range of 188 months to 235 months under the crack cocaine Guidelines. The district court decided that it was appropriate to consider the crack cocaine Guidelines and concluded that a sentence of 200 months was reasonable given the nature of the crime and Tabor's personal characteristics. United States v. Tabor, 365 F. Supp. 2d 1052, 1061 (D. Neb. 2005). Tabor appeals.

II.

Tabor argues that the testimony of the above witnesses, who were all testifying pursuant to plea agreements, did not establish beyond a reasonable doubt that he was involved in a conspiracy to violate federal drug laws. In reviewing sufficiency of the evidence claims, we view the evidence in the light most favorable to the government, with all reasonable inferences and credibility determinations made in support of the jury's verdict. See Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. McDougal, 137 F.3d 547, 553 (8th Cir. 1998). "We must uphold the verdict if any reasonable jury could have found the elements of the crime beyond a reasonable doubt." McDougal, 137 F.3d at 553.

In order to convict Tabor of conspiracy to distribute fifty grams or more of cocaine base, the jury must have found beyond a reasonable doubt that (1) a conspiracy to distribute cocaine existed; (2) Tabor knew about the conspiracy; and (3) he knowingly became a part of the conspiracy. United States v. Davidson, 195 F.3d 402, 406 (8th Cir. 1999). Tabor does not contest the existence of a conspiracy to distribute crack cocaine. Rather, he contends that the government proved only that he was present during incidents of cocaine trafficking and he argues that there was insufficient evidence that he knowingly became a part of the conspiracy. Tabor claims that the government did not satisfy its burden of proof on this element because its witnesses were not credible.

"Attacks on the sufficiency of the evidence that call upon this court to scrutinize the credibility of witnesses are generally not an appropriate ground for reversal." United States v. McKay, 431 F.3d 1085, 1094 (8th Cir. 2005). We have repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses, noting that it is within the province of the jury to make credibility assessments and resolve conflicting testimony. See, e.g., United States v.

-4-

Velazquez, 410 F.3d 1011, 1015-16 (8th Cir.), cert. denied, 126 S. Ct. 504 (2005); United States v. Tensley, 334 F.3d 790, 795 (8th Cir. 2003).

The testimony of the government's witnesses established that there was an agreement between Tabor and Tafoya to distribute cocaine, that Tabor knew of the agreement, and that he knowingly entered into it. Casillas testified that Tafoya would call Tabor ahead of time to arrange cocaine transactions, and the testimony recounted numerous large-scale cocaine transactions involving Tabor and other cocaine dealers and users. This evidence indicated that Tabor was a middle-man who knowingly supplied cocaine to dealers in Lincoln. The large quantities of cocaine involved demonstrated that Tabor was not buying and selling cocaine for personal use, but rather knew about and knowingly became a part of Tafoya's conspiracy to distribute cocaine.

It was also made clear to the jury that the government's witnesses were testifying pursuant to plea agreements in exchange for potentially reduced sentences, and that most were former drug users and dealers. During cross-examination, defense counsel attacked the credibility of these witnesses and pointed out inconsistencies between their trial testimony and their prior statements. In addition, one of the jury instructions emphasized that the jury should weigh each witness's credibility and take into account factors such as whether the person had been convicted of a felony, entered into a plea agreement with the government, or abused drugs. The jury's choice to credit the testimony of these witnesses was within its province, and the testimony itself was more than sufficient for a reasonable jury to find Tabor guilty.

### III.

Tabor also argues that the district court erred in finding him responsible for one kilogram of cocaine base. He contends that the district court violated his Sixth Amendment right to a jury trial when it found this quantity by a preponderance of the

evidence, rather than deferring to the quantity the jury found beyond a reasonable doubt. Tabor argues that, at best, the jury verdict amounts to a finding that he should be held responsible for fifty grams of crack cocaine, which corresponds to a base offense level of 32. The government responds that there was no Sixth Amendment error and that the district court did not err in finding the drug quantity.

This circuit has consistently held that judicial findings of drug quantity for sentencing purposes do not violate the Sixth Amendment when made under an advisory Guidelines regime. United States v. McKay, 431 F.3d 1085, 1094 (8th Cir. 2005); United States v. Smith, 429 F.3d 1179, 1181 (8th Cir. 2005); United States v. Vaughn, 410 F.3d 1002, 1004 (8th Cir.), cert. denied, 126 S. Ct. 1103 (2005). Consequently, there was no Sixth Amendment error in the district court's finding of drug quantity under the preponderance of the evidence standard, as the judge applied the Guidelines in an advisory manner.

Furthermore, the district court did not err by attributing one kilogram of cocaine base to Tabor. The Presentence Investigation Report (PSR) found Tabor responsible for 1.5 kilograms of cocaine base. In Tabor's objections to the PSR, he agreed that he was responsible for between 500 grams and 1.5 kilograms and that the corresponding advisory Guideline base offense level would be 36. We have held that "unless a defendant objects to a specific factual allegation contained in the PSR, the court may accept that fact as true for sentencing purposes." United States v. Moser, 168 F.3d 1130, 1132 (8th Cir. 1999); see also Fed. R. Crim. P. 32(i)(3)(A). At the sentencing hearing, defense counsel neither argued for a specific quantity within the agreed-to range nor presented any evidence on this issue. The district court could therefore accept that range of quantities as admitted for sentencing purposes. Because any quantity within the range would have resulted in the same base offense level under the advisory Guidelines, there was no error in the district court's decision to select one kilogram. See United States v. Mondragon-Hernandez, 408 F.3d 1086, 1088 (8th Cir. 2005) (holding that drug quantity was admitted where defense counsel

did not state a specific factual objection to the PSR and both parties indicated at the hearing that the ultimate Guidelines range would reflect this quantity).

## IV.

Lastly, Tabor argues that it was unreasonable for the district court to have given weight to the crack cocaine Guidelines, as they are irrational and result in unfair and disparate sentences as compared to sentences for powder cocaine. Tabor contends that, by considering the crack cocaine Guidelines, the district court violated 18 U.S.C. § 3553(a), which directs courts to impose sentences that are "not greater than necessary."

After United States v. Booker, 543 U.S. 220 (2005), the sentencing court's duty is to consider the Guidelines range and tailor the sentence in light of other statutory concerns, such as the sentencing factors listed in 18 U.S.C. § 3553(a). United States v. Cawthorn, 429 F.3d 793, 802 (8th Cir. 2005). Section 3553(a) requires that the court impose a sentence no greater than necessary to account for the nature and seriousness of the offense and the defendant's history and characteristics, as well as to provide just punishment, to protect the public, and to avoid unwanted sentencing disparities. 18 U.S.C. § 3553(a).

We review the district court's sentencing decisions for reasonableness. United States v. Dalton, 404 F.3d 1029 (8th Cir. 2005). When a sentence is within the Guidelines range, it is presumptively reasonable. United States v. Lincoln, 413 F.3d 716, 717 (8th Cir. 2005). We have previously rejected Tabor's argument about the unreasonableness of the crack cocaine Guidelines post-Booker. Cawthorn, 429 F.3d at 803 (holding that "sentencing within the Guidelines based on the crack-powder disparity is not inherently unreasonable"); accord United States v. Gipson, 425 F.3d 335, 336 (7th Cir. 2005) (holding that district court did not act unreasonably by choosing not to depart downward from advisory Guideline range based on Guidelines'

differential in punishment for crack and powder cocaine); United States v. Pho, 433 F.3d 53, 64 (1st Cir. 2006) (holding that district court could not impose a sentence outside advisory Guideline range based solely on rejection of Guidelines' disparate treatment of crack and powder cocaine).

Tabor has not overcome the presumption of reasonableness applicable to a Guidelines sentence. The district court found that a sentence within the Guidelines range would fulfill the statutory goals of sentencing and that there was no reason to depart based on any other § 3553(a) factor. The court considered Tabor's military record and his post-indictment charitable works and assumption of family responsibilities. Nonetheless, the court determined that Tabor was less deserving of leniency than other crack dealers because at the time of the crime, "he was not addicted to the drug but was selling it for personal gain and he was more mature, came from a more solid family background, and was better educated than many others who engage in this type of crime." Tabor, 365 F. Supp. 2d at 1062. The court also stated that Tabor's sentence was informed by the sentences of the other members of the conspiracy, and that it was consistent with his level of culpability. Id. Finally, the district court emphasized that Tabor's sentence was substantially below the high end of the Guideline range, and that he was not eligible for any departure since he did not accept responsibility for the crime. Id. Nothing in the record suggests that Tabor's sentence is unreasonable or that the district court based its sentence on an improper or irrelevant factor or neglected to consider a relevant factor.

V.

For the reasons stated above, Tabor's conviction and sentence are affirmed.

_____

-8-