# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3809

_____

United States of America,        *
                                *

        Appellee,           *

                                *   Appeal from the United States
      v.                     *   District Court for the
                                *   District of Nebraska.

Lynn C. Bower,             *

                                *

        Appellant.         *

_____

Submitted: March 13, 2007
Filed: May 10, 2007

_____

Before MELLOY, SMITH, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

      Lynn C. Bower was indicted for conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1). The jury convicted Bower of the charged offense. The district court[1] subsequently sentenced Bower to 188 months' imprisonment. Bower appeals his conviction, arguing that the evidence is insufficient to support the jury's guilty verdict and that his sentence is unreasonable. We affirm.

_____

      [1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

## I. *Background*

To establish that Bower was guilty of conspiring to distribute methamphetamine, the government presented its case through the testimony of nine cooperating witnesses and two law enforcement officers.

First, Jolene Cortez testified pursuant to a cooperation plea agreement that co-defendant Francisco Robles would go to the apartment of Jennifer Lovings—Bower's ex-girlfriend—and give methamphetamine to Bower on numerous occasions. In exchange, Bower would give Robles approximately $2,000. Thereafter, she explained that she and Robles would go to Grandmothers Restaurant where Robles would call a young Hispanic male known as "Nephew" to pick Robles up from the restaurant. According to Cortez, when Robles and "Nephew" returned to the restaurant, Robles would have about four to five ounces of methamphetamine. Then, Cortez and Robles would go back to Lovings's home where Bower was present. Robles, Bower, Cortez, and Loving would use methamphetamine together. According to Cortez, Bower came to her apartment on numerous occasions between January and April 2005 to pick up methamphetamine from Robles. Before that time, Bower met Robles at other places to obtain the methamphetamine.

Second, Lovings, testifying pursuant to a cooperating plea agreement, stated that she purchased methamphetamine from Bower at the South Omaha garage and was aware that Bower was selling drugs to other people at the garage, including Michael Anderson. According to Lovings, she also started going to a garage at 72nd and Crown Point ("Crown Point garage") where she saw Bower with large quantities of methamphetamine and witnessed him weigh out the methamphetamine into smaller user quantities. Lovings purchased methamphetamine from Bower at the Crown Point garage three times per week. Lovings testified that she was at the Crown Point garage five to six times per week where she witnessed about 10 transactions on each occasion. Like Cortez, Lovings also testified that Robles delivered methamphetamine

-2-

to Bower at Lovings's residence on several occasions and that Bower would go to Cortez's apartment to obtain methamphetamine from Robles.

Third, Woody Joe Jackson testified that he worked with Bower at a garage on 26th and G Street in 2003 and that Bower would give Jackson methamphetamine in exchange for Jackson working on cars for Bower. This occurred about once a week for about three months during the summer. Jackson also admitted to stealing two pounds of methamphetamine from Bower. As a result, Bower, along with two or three other men, beat Jackson.

Fourth, Mendy Landon testified that she received methamphetamine from Bower one time, while her husband, Michael Landon, obtained methamphetamine from Bower a couple of times per week.

Fifth, Michael Landon testified that he would go to Bower's garage, located around 24th and F Street, to get methamphetamine from Bower approximately four to five times per week. He also went to the Crown Point garage to obtain methamphetamine from Bower about 50 times. According to Michael Landon, Bower also met him at his house or at the cemetery where he worked to get the methamphetamine.

Sixth, Amy Shackelford testified that she went to Bower's garage on Cass Street ("Cass Street garage") to purchase methamphetamine and saw him with large quantities of methamphetamine. She also obtained methamphetamine from Bower at the Crown Point garage. According to Shackelford, Lovings informed her that Bower received his methamphetamine from Robles. At Lovings's apartment, Shackelford witnessed Bower weigh out methamphetamine into smaller quantities. She also testified that Lovings gave her a video tape of a drug deal conducted at Lovings's apartment between Bower and Robles.

Seventh, David Roland testified that he would trade electronic equipment with Bower for drugs. Roland went to both the Crown Point garage and to the garage on 26th Street to obtain methamphetamine from Bower. Roland observed Bower with large quantities of methamphetamine.

Eighth, David Wise testified that he purchased methamphetamine from Bower at the Cass Street garage on two or three occasions. He also stated that he observed Bower with large quantities of methamphetamine, witnessed Bower weigh out the methamphetamine into smaller quantities, and saw Bower sell the methamphetamine to others, including Michael Landon. Additionally, Wise explained that because Bower and Lovings did not trust one another, they installed video cameras in their apartment. Lovings brought the video tapes to Wise's house to watch. One of the tapes was a drug transaction between Bower and Robles, which showed Robles giving Bower methamphetamine and Bower paying Robles.

Ninth, Anita Heberlein testified that she met Bower and Robles through Cortez. Heberlein lived across the hall from Cortez and received methamphetamine from Robles at Cortez's apartment. According to Heberlein, she saw Bower at Cortez's apartment three or four times.

Tenth, Omaha Police Officer Jeffrey Hunter testified that he interviewed Jackson after Bower assaulted him. Officer Hunter stated that Jackson informed him of his belief that the assault was in retaliation for his stealing the methamphetamine. Officer Hunter explained that he then began doing research on Bower and subsequently took Jackson to a couple of addresses. Jackson then took Officer Hunter to Bower's residence and to a garage in the area of 26th and G Street.

Finally, Omaha Police Detective Mark Lang, an expert regarding drug trafficking, testified that in April 2005, he became involved in a narcotics investigation with a person named Dave Roland after being told that Roland had

information pertaining to individuals who were involved in distributing illegal narcotics, specifically, methamphetamine. Detective Lang met with Roland and debriefed him. An agreement was made that an investigation would start on an individual Roland was obtaining methamphetamine from—Jennifer Lovings.

Detective Lang testified that he later met with Michael Anderson and supervised a recorded phone call between Anderson and Bower. The purpose of the phone call was to have Anderson try to buy methamphetamine from Bower. Detective Lang explained that the term "ice cream" ("I'm in dire need of ice cream") referred to methamphetamine. Bower informed Anderson that he was out. Anderson then asked "What about Jen?" Bower explained that Jen was gone, meaning that she had been arrested, along with Cortez. Detective Lang testified that during the taped phone conversation, Anderson mentioned Robles.

Detective Lang stated that Lovings and Bower were both arrested on May 4, 2005. When Bower was arrested, he had in excess of $3,000, suspected drug records, and 1.7 grams of methamphetamine in his possession. In excess of $1,000 was located in Bower's left front pants pocket, and an additional $2,000-plus was located in his left rear pants pocket. Detective Lang further testified that Bower was arrested again on June 9, 2005. (Tr. 349). When Bower was arrested, he was in possession of one gram of methamphetamine.

He also testified about the different locations where Bower was known to have conducted drug transactions, including a two-bay garage with two enclosed trailers parked in front of one of the bays located at 4202 South 26th Street, Crown Point Storage facility at approximately 73rd and Crown Point, 4532 South 19th Street, a duplex on 4216 Vinton Street—the residence of Wise and Shackelford, and 4604 South 42nd Street—the residence of Mendy Landon, Michael Landon, Lovings, and Bower.

Following a four-day trial, the jury returned a guilty verdict. A presentence investigation report (PSR) was subsequently prepared. Based on a finding that Bower was responsible for 3,033.45 grams (3 kilograms) of methamphetamine, the PSR placed Bower at an Offense Level 34. A two-level enhancement was added pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a firearm during the drug conspiracy, yielding a total Offense Level 36. With an Offense Level 36 and a Criminal History Category II, Bower's Guidelines range was 210 to 262 months.

Bower filed objections to the PSR, specifically objecting to the offense conduct, offense level computation, quantity determination, and the firearm enhancement. He also filed a motion for a downward departure, arguing that the PSR overstated his criminal history. A revised PSR was prepared that addressed Bower's objections.

The government filed a sentencing brief arguing that the district court should hold Bower accountable for 8.8 kilograms of methamphetamine, placing him at an Offense Level 36. The government also argued that Bower should receive the firearm enhancement recommended in the PSR. Although not recommended in the PSR, the government also argued that Bower should receive an enhancement based on obstruction of justice.

At the sentencing hearing, the government presented evidence regarding the obstruction of justice enhancement. The district court found that an obstruction of justice enhancement was not warranted and further determined that Bower should be held accountable for between one-and-a-half and five kilograms of methamphetamine, placing him at Offense Level 34.

The district court upheld the firearm enhancement and placed Bower at an Offense Level 36. Addressing Bower's Criminal History Category II, the district court stated that "dealing with criminal history categories really are very difficult to handle because there aren't very many choices. And you get into certain categories awfully

quick—awfully quick, even though the conduct that's being considered maybe really doesn't justify that. And I believe that's true here." The district court then reduced Bower's criminal history to a Category I, resulting in a Guidelines range of 188 to 235 months' imprisonment. Citing age, community factors, sentencing disparity, and a recidivism study, Bower argued for a sentence below the Guidelines. The district court responded:

> [R]ecidivism is—is a hard one. I know that we can go by a lot of statistics, but statistics aren't individuals. And it's a little difficult sometimes when you're looking at statistics to say, well, this person probably won't do this or probably will do this; nevertheless, their actual actions might be different. I have difficulty saying that a departure on—on that basis would be justified.

> And I don't think that—it seems to me that, again, as I said earlier in connection with the sentencing of Mr. Robles, that we're dealing with one of the most destructive drugs that society knows today. And it's a drug that just totally consumes the individual who becomes involved with it. And it's almost instantaneously addictive.

> And my feeling is that the people who get involved in this, and particularly in the distribution of methamphetamine, need to be—needed to be treated harshly, if you—if you wish.

> I—and I don't believe that the evidence here or his past history justifies the Court—and I don't ever call it a departure any longer because the guidelines are not mandatory, they—they are simply one of the factors the Court must consider. But if the Court—and that's particularly true in the Eight Circuit. If I am going to sentence the defendant outside those guidelines as they presently exist, then I have to have some substantial reasons for doing so. And I don't see any reasons generally, either under the decisions of the Supreme Court in the *Koon* case, for example, or the

statements of the Untied States Sentencing Commission that would justify my do[ing] that.

The district court then sentenced Bower to 188 months' imprisonment.

## II. *Discussion*

Bower raises two arguments on appeal. First, he argues that insufficient evidence supports his conviction for conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1). Second, he argues that his sentence is unreasonable because the sentence imposed was greater than necessary to comply with the statutory sentencing objectives and did not correctly balance the factors under 18 U.S.C. § 3553(a).

## A. *Sufficiency of the Evidence*

Bower asserts that insufficient evidence exists to support his conviction because (1) the government's evidence was from witnesses whose testimony was inconsistent and devoid of credibility and (2) the government placed into evidence credible testimony from law enforcement officers that contradicted the testimony of his alleged accomplices.

"We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. May*, 476 F.3d 638, 640–41 (8th Cir. 2007) (internal quotations and citation omitted). We will only reverse the defendant's conviction "if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.* at 641 (internal quotations and citation omitted).

"Although [a defendant may] conten[d] that the government witnesses were not credible, we do not review questions involving the credibility of witnesses, but leave credibility questions to the jury." *United States v. Barajas*, 474 F.3d 1023, 1025 (8th Cir. 2007) (internal quotations and citations omitted); *see also United States v. Lopez*, 443 F.3d 1026, 1031 (8th Cir. 2006) (en banc) ("We are obliged to defer to the jury's determination of the credibility of the witnesses."). "Attacks on the sufficiency of the evidence that call upon this court to scrutinize the credibility of witnesses are generally not an appropriate ground for reversal." *United States v. Tabor*, 439 F.3d 826, 829 (8th Cir. 2006) (internal quotations and citation omitted).

While Bower contends that the government witnesses, specifically his alleged accomplices, were not credible, and contradicted testimony by law enforcement, we have "repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses, noting that it is within the province of the jury to make credibility assessments and resolve conflicting testimony." *Id*.

Therefore, we hold that "[t]he jury's choice to credit the testimony of these witnesses was within its province, and the testimony itself was more than sufficient for a reasonable jury to find [Bower] guilty." *Id*. at 830.

## B. *Reasonableness of the Sentence*

Bower's second argument is that his sentence is unreasonable because the district court imposed a sentence that was greater than necessary to comply with the statutory sentencing objectives and failed to correctly balance the factors under § 3553(a).

"[S]entences within the advisory Guidelines range are presumptively reasonable." *United States v. Akers*, 476 F.3d 602, 607 (8th Cir. 2007). To rebut this

presumption, the defendant must point to evidence in the record "indicating that [the district court] applied significant weight to an 'improper or irrelevant factor' or [] failed to apply appropriate weight 'to a relevant factor [under § 3553(a)].'" *United States v. Donnelly*, 475 F.3d 946, 956 (8th Cir. 2007) (quoting *United States v. Haack*, 403 F.3d 997, 1004 (8th Cir. 2005)).

Because Bower's sentence of 188 months' imprisonment falls within the presumptively reasonable advisory Guidelines range of 188 to 235 months' imprisonment, Bower bears the burden of rebutting this presumption. Bower asserts that the district court "committed a clear error in judgment in balancing the relevant sentencing factors," because (1) no evidence exists that he exerted any influence or control over his younger accomplice, who received lesser sentences than he did, and (2) he, at the age of 50, is not likely to re-offend, as studies show that the recidivism rate drastically declines as the age of the offender increases, particularly after the age of 50.

As the district court's colloquy with Bower demonstrates, however, the district court considered Bower's arguments and rejected them in weighing the § 3553(a) factors. Because the district court adequately considered the § 3553(a) factors in sentencing Bower at the low end of the advisory Guidelines range, we hold that Bower's sentence is not unreasonable.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____