# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1839

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Cesar Alfredo Torres, also known as | * | |
| Cesar Rodrigo Salas Vallejo, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 14, 2008
Filed: January 13, 2009

_____

Before MELLOY, BEAM, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

A jury convicted Cesar Torres of conspiracy to distribute and possess with intent to distribute cocaine, methamphetamine, and marijuana in violation of 21 U.S.C. § 841(a)(1), as sentenced in accordance with 21 U.S.C. §§ 841(b)(1) and 846. The district court sentenced Torres to 151 months' imprisonment, 5 years' supervised release, and a special assessment of $100.[1] Torres appeals, arguing that the evidence was insufficient to support the jury's verdict and that the sentence of 151 months is

_____

[1] The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

substantively unreasonable. Having jurisdiction under 28 U.S.C. § 1291, we affirm both the conviction and the sentence.

I. Background

Because Torres challenges the sufficiency of the evidence, we present the facts in the light most favorable to the jury's verdict. *United States v. Cannon*, 475 F.3d 1013, 1016 (8th Cir.), *cert. denied*, 128 S. Ct. 365 (2007). Following a police investigation of several individuals, Torres was arrested and indicted in July 2007 for conspiracy to distribute and possess with intent to distribute a mixture or substance containing methamphetamine, a mixture or substance containing cocaine, and marijuana. Two of Torres's alleged co-conspirators and co-defendants, Enrique ("Lupe") Sosa and Fernando Marquez, are currently fugitives. During an interview with law enforcement officers following his arrest, Torres provided detailed information about his co-defendants' activities, including their potential location. A jury found Torres guilty on January 11, 2008. Seven persons under investigation for crimes arising out of the same events as those with which the government charged Torres entered plea agreements and testified against him as cooperating witnesses.

Cooperating witness Mickie Weppner testified that Angela Oneth first introduced him to Torres, Sosa, and Marquez in the spring or summer of 2006 for the purpose of obtaining quantities of drugs larger than what Oneth wanted to deal. Weppner testified that after this meeting he obtained methamphetamine, cocaine, and marijuana from the trio at least a couple of times per week until his arrest in December 2006. Weppner would most often call Sosa for drugs, and Sosa would either send Torres alone or would arrive to conduct the transaction accompanied by Torres and/or Marquez. Weppner also testified that Torres provided him with drugs on credit and that Weppner would pay either Sosa or Torres once he obtained money.

Cooperating witness Troy Springer testified that he accompanied Weppner on at least two occasions when Weppner obtained drugs from Torres. On the first occasion, Torres dropped off a quarter-pound of methamphetamine at Weppner's house. On another occasion, Torres provided Weppner with methamphetamine concealed in a bread bag while the three were at a gas-station parking lot. Cooperating witness Michael Sands similarly testified that he was present when Weppner made drug purchases from Torres, Sosa, and Marquez. On one occasion, Sands was present when Weppner purchased approximately a quarter-pound of methamphetamine concealed in a grocery bag directly from Torres. During another purchase, Sands waited in his car while he observed Weppner speak with Torres and Marquez. When Weppner returned, he possessed between a quarter- and half-pound of methamphetamine. In total, Sands accompanied Weppner to obtain drugs from Torres, Sosa, and/or Marquez approximately twelve times.

Cooperating witness Shantella Jordan testified that while residing with Weppner, Weppner obtained methamphetamine, powder cocaine, and marijuana from Torres, Sosa, and Marquez. At least three or four times, the three met with Weppner, and when they left, Weppner would be in possession of approximately four to six ounces of methamphetamine. On one occasion, Jordan and Weppner obtained an ounce of methamphetamine directly from Torres after picking him up from a bar. Following Weppner's incarceration, Jordan testified that she started obtaining drugs from Sosa. At least once, Torres was present when Jordan obtained two ounces of methamphetamine from Sosa.

Cooperating witness Angela Oneth testified that she used cocaine with Torres. While she never purchased drugs directly from Torres, she obtained methamphetamine from Sosa and Marquez on three or four occasions. During these transactions, Torres was present and aware that the purchases were taking place. Cooperating witness LeShawn Rogers also testified that he purchased methamphetamine from alleged co-conspirators Sosa and Marquez. At delivery,

-3-

Rogers saw Torres with Sosa and/or Marquez approximately ten times. Rogers also testified that Torres provided him with cocaine on one occasion and attempted to convince him to deal the drug.

Finally, cooperating witness Kayla Tobey testified that Weppner was her source of methamphetamine. She often overheard conversations between Weppner, Sands, and Springer discussing Weppner's source for the drugs. Tobey testified that Weppner would always discuss "Cesar" and "Lupe," although she never met them. Tobey also once accompanied Weppner to the mobile-home park where Torres, Sosa, and Marquez lived. While parked at the mobile-home park, Weppner left Tobey in the vehicle, and when he returned, he possessed methamphetamine.

## II. Discussion

### A. Sufficiency of the Evidence

We examine the evidence "in the light most favorable to the jury verdict and giv[e] the verdict the benefit of all reasonable inferences. We will reverse the jury verdict only if no reasonable jury could have found [the defendant] guilty" beyond a reasonable doubt. *United States v. Montano*, 506 F.3d 1128, 1132 (8th Cir. 2007) (internal citations omitted).

To prove conspiracy, the Government must show that there was an agreement to achieve an illegal purpose, Torres knew of the agreement, and Torres knowingly participated in the agreement. *United States v. Castro-Gaxiola*, 479 F.3d 579, 581 (8th Cir.), *cert. denied*, 128 S. Ct. 430 (2007). "Mere presence at the location of the crime alone, even when coupled with knowledge of that crime, is not sufficient to establish guilt on a conspiracy charge." *United States v. Sloan*, 293 F.3d 1066, 1067 (8th Cir. 2002) (internal quotation omitted). Additionally, "[e]vidence of association or acquaintance. . . alone is insufficient to establish a conspiracy." *United States v.*

*Whirlwind Soldier*, 499 F.3d 862, 869 (8th Cir.), *cert. denied*, 128 S. Ct. 1286 (2008) (internal quotation omitted). "Instead, the defendant must have knowingly contributed . . . efforts to the conspiracy's objectives." *Sloan*, 293 F.3d at 1067.

Torres contests the sufficiency of the evidence, arguing that the Government failed to prove beyond a reasonable doubt that he was a member of a conspiracy to distribute and possess with intent to distribute methamphetamine, cocaine, and marijuana. Torres does not contest the existence of a conspiracy. He argues instead that no reasonable jury could find that he was a member of that conspiracy because he was merely present during the sale of controlled substances, and his association with Sosa and Marquez is insufficient for criminal liability. He further challenges the Government's reliance on cooperating witnesses who hoped for sentence reductions in exchange for their testimony.

The evidence supports the jury's finding that Torres was more than a mere bystander and that he knowingly contributed to, and was thus a member of, the conspiracy in numerous ways. As outlined above, the witness testimony establishes the following: Torres made numerous deliveries of controlled substances, he accompanied his co-conspirators during other deliveries, he collected the proceeds from his and his co-conspirators' sales of controlled substances, and he sold cocaine. Torres's own statements following his arrest also evidence his participation in the conspiracy. At trial, a law-enforcement officer testified that the extent of Torres's knowledge about Sosa's and Marquez's dealings was inconsistent with someone who was a simple bystander and not a participant in the drug trade. Thus, viewing the evidence in the light most favorable to the jury's verdict, a reasonable jury could have concluded that Torres knowingly participated in the conspiracy.

With regard to Torres's claim that the government's witnesses were not credible because they expected to receive reduced sentences in exchange for their testimony, it is not our charge on appeal to assess the credibility of witnesses. *United States v.*

*Bower*, 484 F.3d 1021, 1025–26 (8th Cir. 2007). "[W]e have repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses, noting that it is within the province of the jury to make credibility assessments and resolve conflicting testimony." *Id.* (internal citation and quotation omitted). This court has also "frequently placed importance on the defendant's opportunity to expose to the jury the inconsistency between a witness's trial testimony and earlier inconsistent statements." *United States v. Crenshaw*, 359 F.3d 977, 990–91 (8th Cir. 2004). In this case, Torres's counsel repeatedly and properly called into question the witnesses' credibility. Ultimately, however, "[i]t was the jury's job to determine whether these witnesses could be trusted." *United States v. Baker*, 367 F.3d 790, 798 (8th Cir. 2004).

Some of the cooperating witnesses gave statements to the police that were inconsistent with their later trial testimony, particularly with regard to Torres's involvement in the conspiracy and the quantity of drugs involved. This fact, however, is also an insufficient basis on which to overturn the jury's verdict. The government rehabilitated many of these witnesses on redirect, and the types of inconsistences and omissions that Torres highlights do not warrant taking the fact-finding function away from the jury. *See Baker*, 367 F.3d at 798 (indicating that factual determinations as a matter of law may be appropriate in circumstances that include when the testimony describes a physical impossibility under the laws of nature or when it was physically impossible for the witness to have observed what he or she claims); *see also Crenshaw*, 359 F.3d at 990 (providing examples of when inconsistencies in witness testimony were insufficient to undermine a jury's conviction).

In conclusion, the verdict indicates that the jury found the Government's cooperating witnesses to be credible and that it accepted their testimony. The testimony established a factual basis to believe that Torres was a member of the conspiracy. As a result, there is sufficient evidence to support the jury's verdict.

B. Reasonableness of the Sentence

Torres also challenges his 151-month sentence, claiming that it is longer than necessary to achieve the goals of sentencing and that under 18 U.S.C. § 3553(a) he merited a sentence below the advisory range. Because Torres does not challenge the district court's calculation of the advisory sentencing guidelines range, we review his sentence for an abuse of discretion and note that a sentence within the guidelines is presumptively reasonable on appeal. *United States v. Pruneda*, 518 F.3d 597, 607 (8th Cir. 2008).

We find that the district court did not abuse its discretion in sentencing Torres at the low end of the advisory range. In this case, the appropriate guidelines range was 151 to 188 months. Torres moved to have the district court sentence him to the mandatory minimum of 120 months based on the nature of the offense, Torres's minimal criminal history, and his character. During the sentencing hearing, Torres's counsel engaged the district court in a lengthy discussion about the reasons why a 120-month sentence was sufficient to promote respect for the law, provide punishment for the offense, and protect the public. Ultimately, the district court overruled Torres's objection to the Presentence Investigation Report and sentenced him to 151 months' imprisonment.

The record does not suggest that the district court failed to consider a relevant factor, weighed an improper or irrelevant factor, or committed a clear error of judgment. *United States v. Beck*, 496 F.3d 876, 879 (8th Cir. 2007). And, as the Supreme Court has indicated, where "the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively." *Rita v. United States* 127 S. Ct. 2456, 2469 (2007); *see also Whirlwind Soldier*, 499 F.3d at 874 (noting that under *Rita* a judge is not required to give more extensive reasons for imposing a sentence within the Guidelines range when clear that the "judge listened to the argument and considered supporting

evidence"). Thus, we find that the district court did not abuse its discretion in imposing a sentence at the bottom of the properly calculated guidelines range.

Accordingly, we affirm Torres's conviction and sentence.

_____