# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1451

_____

United States of America,      *
    *
         Plaintiff–Appellee,     *
    *    Appeal from the United States
      v.     *    District Court for the
    *    Northern District of Iowa.
Knothbang Yuot,     *
    *    [UNPUBLISHED]
         Defendant–Appellant.     *

_____

Submitted: June 12, 2009
Filed: July 30, 2009

_____

Before MELLOY, BEAM, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

A jury convicted Kouthbang Yuot of conspiring to distribute fifty grams or more of cocaine base ("crack cocaine"), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846, and possessing with intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). At the close of the government's case, Yuot moved for judgment of acquittal based on the sufficiency of the evidence, which the district court[1] denied. Following the jury's verdict, Yuot filed a renewed motion for judgment of acquittal or, in the alternative,

_____

[1] The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

a motion for a new trial. The district court denied both of those motions and sentenced Yuot to 120 months' imprisonment and 5 years' supervised release. Yuot appeals, arguing that insufficient evidence supported the jury's verdict. We affirm.

I.

"Because [Yuot] challenges the sufficiency of the evidence . . . we present the facts in the light most favorable to the jury's verdict." United States v. Cannon, 475 F.3d 1013, 1016 (8th Cir. 2007).

Yuot was a passenger in a car that was stopped for speeding. Yuot had been under police surveillance as part of an ongoing drug investigation. During a search of the vehicle by a K-9 unit, police found a single black sock containing approximately twenty-two grams of crack cocaine between the driver's seat and the center console of the car. A police search of Yuot's person uncovered a single black sock and a roll of quarters in Yuot's pocket.

At trial, four cooperating witnesses testified on behalf of the government as to Yuot's drug activity and his involvement in the charged drug conspiracy. The first witness testified that he had participated in a controlled buy of crack cocaine from Yuot's co-defendant and co-conspirator. The first witness also testified that he began purchasing drugs from Yuot in 2007 and had done so "plenty of times." On both direct and cross examination, the witness admitted that he had agreed to help law-enforcement officials and testify against Yuot in an effort to avoid prison time. The second cooperating witness testified that she had purchased crack cocaine from Yuot approximately four or five times. On both direct and cross examination, the second witness admitted that she was cooperating as part of a plea agreement and that she had entered that agreement with the hopes of receiving a lesser sentence for several drug crimes.

The third cooperating witness testified that she had purchased crack cocaine from Yuot and his co-defendant more than twenty times. This witness also testified that she had driven Yuot's co-defendant from Sioux City, Iowa, to Lincoln, Nebraska, so that the co-defendant could purchase crack cocaine for resale. She further revealed that she had prostituted herself and exchanged sex for drugs with Yuot. On both direct and cross examination, the third witness conceded that she was testifying for the government in hopes of avoiding drug charges. On cross examination, in an effort to expose potential infirmities in the witness's testimony, Yuot and his co-defendant questioned the third witness about a previous conviction for felony forgery, inconsistencies in her story, and potential flaws in her memory.

The fourth and final cooperating witness testified that he had received crack cocaine for resale from Yuot on two or three occasions and had witnessed Yuot sell crack cocaine more than two or three times. On direct examination, the government established that the witness was a cooperating witness, and, on cross examination, the witness admitted to testifying in the hopes of receiving a lesser sentence for a drug crime. Cross examination also revealed some inconsistencies between the fourth witness's trial testimony and a police report. The witness, in fact, asserted that, initially, he had lied to the police.

In addition to this testimony, as part of its case-in-chief, the government presented evidence about two controlled purchases of crack cocaine involving Yuot's co-defendant that police had set up with the help of two different confidential informants. One officer testified that marked currency used in one of the controlled purchases was recovered from Yuot's co-defendant upon the co-defendant's arrest. The government also introduced a transcript of a recorded phone call between the co-defendant and a confidential informant for the purpose of setting up a crack-cocaine buy, as well as other audio and video surveillance tapes of drug activity involving the alleged members of the conspiracy.

## II.

We review the sufficiency of the evidence to support a jury verdict de novo, United States v. Weaver, 554 F.3d 718, 720 (8th Cir. 2009), and "examine the evidence in the light most favorable to the jury verdict and give the verdict the benefit of all reasonable inferences." United States v. Torres, 552 F.3d 743, 746 (8th Cir. 2009) (quotations and alterations omitted). "We will reverse the jury verdict only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id. (quotations and alterations omitted).

To convict Yuot of conspiracy to distribute and possess with intent to distribute crack cocaine, the government was required to submit evidence sufficient to prove beyond a reasonable doubt that (1) there was an agreement to distribute the drug, (2) Yuot knew of the agreement, and (3) he knowingly joined in the agreement. See United States v. Johnson, 439 F.3d 947, 954 (8th Cir. 2006). " The government need not have direct evidence of an explicit agreement—a 'tacit understanding' among co-conspirators may be, and often will be, inferred from circumstantial evidence." Id. To convict Yuot of possession of crack cocaine with intent to distribute, the government was required to show beyond a reasonable doubt that Yuot: "(1) was in possession of cocaine base, (2) knew he was in possession of cocaine base, and (3) intended to distribute some or all of the cocaine base." United States v. Thompson, 285 F.3d 731, 733 (8th Cir. 2002).

Yuot contests the sufficiency of the evidence, arguing that the government failed to prove beyond a reasonable doubt that he was a member of a drug conspiracy. Yuot claims that the cooperating witnesses' testimony was insufficient to establish his membership in the conspiracy because the witnesses were not credible and "such questionable evidence, without sufficient substantiation or testimony regarding the details of a conspiracy, cannot serve as the basis" for his conspiracy conviction. We find this argument unavailing. "We have repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses" despite the fact that

they testified with the hope of receiving leniency in exchange for their cooperation. United States v. Coleman, 525 F.3d 665, 666 (8th Cir.), cert. denied, 129 S. Ct. 430 (2008). The cooperating witnesses' motivations do not make their testimony "inherently unreliable," United States v. Coplen, 533 F.3d 922, 931 (8th Cir. 2008), and this is particularly the case when the fact of the cooperation was "made clear to the jury . . . during direct and cross examination." Cannon, 475 F.3d at 1016 n.2. Here, the record reflects that Yuot and his co-defendant repeatedly and thoroughly called the witnesses' motivations and credibility into question. Ultimately, however, the jury appears to have credited the witnesses' testimony, and it is not our charge on appeal to second-guess the jury's credibility determinations. See, e.g., United States v. Bower, 484 F.3d 1021, 1025–26 (8th Cir. 2007); United States v. Lopez, 443 F.3d 1026, 1031 (8th Cir. 2006) (en banc).

Furthermore, contrary to Yuot's characterization of the case, the government's evidence against him with regard to the conspiracy charge did not "primarily consist of" the cooperating-witness testimony. As outlined above, there was ample incriminating evidence apart from cooperating-witness testimony, including police-officer testimony relating to a co-conspirator's controlled buys and other direct evidence of Yuot's involvement in the drug conspiracy. In sum, the government's direct and circumstantial evidence provided the details necessary to establish each element of the charged conspiracy offense. Viewing the evidence in the light most favorable to the verdict, then, we find it sufficient to support the conviction.

Yuot's second claim is that insufficient evidence supports his conviction for possession with intent to distribute five grams or more of crack cocaine because the government "failed to link Yuot to the narcotics found in the vehicle in which Yout was a passenger." We also find this argument without merit. "Mere physical proximity to contraband is insufficient to convict a person of possession with intent to distribute." United States v. Scofield, 433 F.3d 580, 586 (8th Cir. 2006) (quotation omitted). "However, possession of contraband can either be actual or constructive."

Id. (quotations and alteration omitted). "Actual possession is the knowing, direct, and physical control over a thing[, while] constructive possession requires knowledge of an object, the ability to control it, and the intent to do so." United States v. Serrano-Lopez, 366 F.3d 628, 634–35 (8th Cir. 2004) (quotation and alteration omitted).

There is ample evidence for a jury to conclude beyond a reasonable doubt that Yuot was in constructive possession of the crack cocaine in the car. Yuot was in the vehicle where the crack cocaine was concealed, and from his location in the passenger seat, the drugs were readily accessible to him. Furthermore, the sock that police found containing twenty-two grams of crack cocaine in the car matched the sock found in Yuot's pocket. From this, the jury could reasonably infer that Yuot owned the sock in which the drugs were found and knew that the drugs were contained within his property. Cf. id. at 635 ("Although a person's mere presence in a vehicle containing contraband is not enough to find him guilty of the offense, presence and other evidence can give rise to an inference of control."). Yuot testified that the sock was not his and that he had mistakenly put it in his pocket because he entered the car after doing laundry, but viewing the evidence in the light most favorable to the verdict, the jury did not find his testimony credible. We must defer to that judgment. See Bower, 484 F.3d at 1025–26; see also United States v. Maloney, 466 F.3d 663, 667 (8th Cir. 2006) ("[T]he presence of one possible 'innocent' explanation for the government's evidence does not preclude a reasonable jury from rejecting the exculpatory hypothesis in favor of guilt beyond a reasonable doubt.").

III.

Having considered all of Yuot's arguments, we affirm his conviction.

_____