# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-4170

_____

United States of America,

      Plaintiff - Appellee,

v.

Robert W. Elam, Jr.,

      Defendant - Appellant.

\* Appeal from the United States
District Court for the
Western District of Missouri.

_____

Submitted: October 11, 2005
Filed: March 23, 2006

_____

Before LOKEN, Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

LOKEN, Chief Judge.

Robert W. Elam, Jr. entered a conditional plea of guilty to being a felon in possession of a firearm and now appeals the district court's[1] denial of his motion to suppress. The firearm was found in a locked cabinet in a common closet in the home where Elam was residing. The principal issue on appeal is whether Kansas City Police Detective Chad Durbin reasonably believed that a third party -- the lessee of

_____

[1]The HONORABLE NANETTE K. LAUGHREY, United States District Judge for the Western District of Missouri, adopting the Report and Recommendation of the HONORABLE JOHN T. MAUGHMER, Chief United States Magistrate Judge for the Western District of Missouri.

the home -- had sufficient "common authority" to consent to a search when she handed Durbin the key to the locked cabinet. We affirm.

On a snowy February evening, Detective Durbin investigated an anonymous tip that methamphetamine was being cooked by "Bob" at a Kansas City home owned by someone named "Squire." Durbin and several officers went to the home without a warrant to conduct a "knock and talk." Martha Squire answered their knock and let the officers in out of the snow. After Durbin explained the complaint they were investigating, Squire said she rented rather than owned the home and consented to a search of the premises. Three others were present in the living room -- Squire's brother, John Hunter; Squire's friend, Jennifer Turner; and Elam. A computer check revealed an outstanding warrant for Turner for selling narcotics; she was arrested and taken to the kitchen. Elam and Hunter remained in the living room, eating and watching television. Squire took Durbin to the basement to look for evidence of methamphetamine manufacture and anyone who might be hiding there. While in the basement, Squire signed a written form consenting to a search of "my residence" for evidence of drug manufacture or trafficking.

After Durbin returned to the main floor, an officer advised that he had found a locked filing cabinet in a closet just off the living room, about ten feet from where Elam was sitting. Squire retrieved a key to the cabinet from a common key rack in the kitchen and handed it to Durbin in the living room. Squire did not say the cabinet belonged to someone else, and Elam did not object to the obviously impending search. In plain view of Elam and Squire, Durbin then unlocked the cabinet. He found the firearm inside along with documents suggesting it belonged to Elam. After the firearm was found, Squire and Hunter denied owning the gun, and Squire told Durbin the cabinet was Elam's. Elam was arrested. He confessed to being a felon in possession the next day. In his motion to suppress and on appeal, Elam argues the firearm and the incriminating statement should be suppressed as fruits of an illegal warrantless search because Squire did not own either the locked cabinet or its

contents, and the police intentionally bypassed Elam's superior privacy interest by obtaining the key from Squire.

It is well settled that the Fourth Amendment does not prohibit the warrantless search of a person's home or other property if the police have obtained the voluntary consent of a third party with common authority over the premises or property. See United States v. Matlock, 415 U.S. 164, 171 (1974). In Illinois v. Rodriguez, 497 U.S. 177 (1990), the Court held that, even if the third party lacked the requisite common authority, the Fourth Amendment is not violated if the police reasonably believed the consent was valid. Thus, the critical question in this case is, "would the facts available to [Detective Durbin] at the time the consent is given warrant a person of reasonable caution in the belief that the consenting party had authority over the item to be searched?" United States v. James, 353 F.3d 606, 615 (8th Cir. 2003). This is a Fourth Amendment reasonableness issue we review *de novo*. Id. We review the district court's underlying findings of fact for clear error. United States v. Adams, 346 F.3d 1165, 1168 (8th Cir. 2003).

Elam argues that it was unreasonable for Durbin to rely on Squire's consent and search the locked cabinet without asking who owned it. We agree with the district court that Durbin reasonably believed that Squire had the authority to consent to the search. The cabinet was found in a common closet. When asked, Squire retrieved the key from a common key rack and handed it to Durbin without warning that the cabinet or its contents belonged to someone else. Elam remained silent, giving the officers no reason to believe that he had a superior privacy interest in the cabinet. This is not a case like James, where the police knew that computer discs belonged to someone else who had attempted to tell the third party to destroy them. 353 F.3d at 615. Rather, this case is like United States v. Stapleton, 10 F.3d 582 (8th Cir. 1993), where the driver of a stopped car consented to a search of the car that yielded a cellular telephone filled with drugs. Though the telephone in fact belonged to the car's passenger, we held that the officers were reasonable in thinking the driver could

consent to the search because the passenger "remained silent when told of the search and the object of the search, and he did not indicate that the telephone was his property and the patrolmen did not have his permission to search it." 10 F.3d at 584.

Elam argues that Durbin used Squire's consent to "intentionally bypass" Elam's superior privacy interest. As the district court noted, we have acknowledged (but never invoked) intentional bypass as a narrow exception to the Supreme Court's third party consent principles, explaining that "police may not rely on a third party's consent to intentionally bypass a person who is present, has a superior privacy interest in the premises, *and actively objects to the search*." United States v. Esparza, 162 F.3d 979, 980 (8th Cir. 1998) (emphasis added), citing United States v. Brokaw, 985 F.2d 951, 953 (8th Cir.), cert. denied 510 U.S. 913 (1993). Here, of course, Elam was present and did not object to the search.

Elam argues that his failure to object should merely be a factor to consider in applying the intentional bypass exception, relying on the Ninth Circuit's decision in United States v. Impink, 728 F.2d 1228 (9th Cir. 1984). But Impink was decided before the Supreme Court's decision in Rodriguez and failed to focus the Fourth Amendment inquiry on whether the police reasonably believed they had valid consent to search. When as in this case a third party with apparent authority gives unequivocal consent, and the defendant is present and fails to disclose a superior privacy interest and object to the search, there is no intentional bypass. Elam's silence in these circumstances made it objectively reasonable for Durbin to conclude either that he had "all the consent that was constitutionally required" from Squire, or that he had Elam's "implied consent." Stapleton, 10 F.3d at 584.

Finally, Elam argues that he did not consent to the search of the cabinet and any implied consent was involuntary given the substantial police presence in the home. "Voluntariness" in this context is limited to whether a person's affirmative consent was the product of police duress or coercion. See Schneckloth v. Bustamonte, 412

-4-

U.S. 218, 227-34 (1973). Durbin relied on Squire's affirmative consent to search the cabinet. That consent was indisputably voluntary. Elam's implied consent is simply an inference that may be drawn from his silence in the face of the impending search. As the police did nothing to coerce or even influence that silence, its voluntariness is not an issue. "[W]hat is at issue when a claim of apparent consent is raised is not whether the right to be free of searches has been waived, but whether the right to be free of unreasonable searches has been violated." Rodriguez, 497 U.S. at 187 (emphasis omitted).

The judgment of the district court is affirmed.

_____