# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-3270

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Tyrone Hilliard, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: March 14, 2007
Filed: June 15, 2007

———————

Before RILEY, BOWMAN, and ARNOLD, Circuit Judges.

———————

RILEY, Circuit Judge.

Following Tyrone Hilliard's (Hilliard) convictions for two drug counts and three firearm counts, the district court[1] sentenced Hilliard to 270 months' imprisonment and 5 years' supervised release. Hilliard appeals, challenging the denial of his motion to suppress, the sufficiency of evidence to support one of his firearm convictions, and the district court's authority to calculate drug quantity for the purpose of sentencing. Finding no error, we affirm.

---

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

# I.    BACKGROUND

On February 15, 2005, Pine Lawn (Missouri) Police Department Officer Craig Church (Officer Church) and another officer responded to a 911 telephone call from a residence located at 2512 Arden (Arden residence) in St. Louis County, Missouri. When the officers arrived at the Arden residence, a partially-clothed woman, identified only as Ms. Cole (Cole), answered the door and invited the officers inside. Hilliard, who was present in the front living room of the Arden residence, did not object to Cole's invitation for the officers to enter the residence.

Cole requested that Officer Church follow her into an adjacent bedroom. Again, Hilliard did not voice any objection to this request.[2] As Cole and Officer Church proceeded to the bedroom, Cole retrieved personal items from the floor and dressed herself. Officer Church observed several pieces of women's clothing and personal items throughout the residence. Once in the bedroom, Cole retrieved a Taurus .38 caliber revolver from under the bed, gave it to Officer Church, and stated the gun belonged to Hilliard. Cole then led Officer Church into the kitchen, where she retrieved a baggie containing crack cocaine and claimed the baggie belonged to Hilliard. The officers arrested Hilliard for possession of the firearm and crack cocaine, read Hilliard his Miranda[3] rights, and transported Hilliard to the Pine Lawn Police Department for booking. At the police station, Hilliard acknowledged purchasing the firearm found in the Arden residence off the street.

In August 2005, St. Louis Metropolitan Police Department officers conducted surveillance on the Arden residence because of suspected drug activity at the

---

[2]The district court found Hilliard was present and did not object to Cole inviting the officers into the residence or inviting Officer Church into the bedroom and kitchen. Hilliard does not contend, nor do we find, that these factual findings are clearly erroneous.

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

residence. During their surveillance, officers observed Hilliard engage in several quick transactions with visitors to the Arden residence in a manner consistent with drug deals. An officer then secured a search warrant for the Arden residence. On August 17, 2005, officers detained Hilliard outside of the Arden residence and executed the search warrant on the property. While detained, Hilliard told officers he had a handgun under his bed pillow, stating "every man should have a gun in his house." Upon searching Hilliard's bedroom in the Arden residence, officers found a .357 Magnum revolver beneath a pillow on Hilliard's bed. Officers also found approximately 237 grams of crack cocaine in the kitchen, which was just down the hall from Hilliard's bedroom. Additionally, officers found several items of expensive jewelry and $791 in money orders within the Arden residence, and later discovered over $1,100 cash on Hilliard's person.

Following Hilliard's arrest for possession of the firearm and crack cocaine, officers took Hilliard to the police station for booking, where Hilliard admitted in a written statement he possessed the crack cocaine "to pay bills." Hilliard also told officers the firearm belonged to him and he possessed the gun for protection. Hilliard admitted purchasing the firearm off the street, because, as a convicted felon, he could not legally purchase a firearm.

A grand jury indicted Hilliard on two counts of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841; two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and two counts of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The district court[4] denied Hilliard's motion to suppress. Thereafter, a jury convicted Hilliard on five of the six counts and acquitted him on one count of possession of a firearm in furtherance of a drug trafficking crime. The district court

---

[4]Judge Webber adopted the report and recommendation of the Honorable Thomas C. Mummert, III, United States Magistrate Judge for the Eastern District of Missouri.

sentenced Hilliard to 270 months' imprisonment and 5 years' supervised release. This appeal followed.

## II. DISCUSSION
### A. Denial of Motion to Suppress

Hilliard first challenges the denial of his motion to suppress evidence and statements obtained in connection with the February 15, 2005, search of the Arden residence and Hilliard's arrest. Specifically, Hilliard argues Cole did not have actual or apparent authority to provide the officers with permission to enter or search the Arden residence because Hilliard was the sole owner and resident of the Arden residence. Valid consent to search may be given by "a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." United States v. Matlock, 415 U.S. 164, 171 (1974). Even if the third party lacked the requisite common authority, the Fourth Amendment is not violated if the police reasonably believed the consent was valid. See Illinois v. Rodriguez, 497 U.S. 177, 188-89 (1990). In such a case, the critical inquiry is whether the facts available to the police at the time the consent is given would warrant a person of reasonable caution to believe the consenting party had authority over the place to be searched. See United States v. Elam, 441 F.3d 601, 603 (8th Cir. 2006). Such a conclusion is a Fourth Amendment reasonableness issue, which we review de novo. Id. We review the district court's underlying factual findings for clear error. United States v. Sledge, 460 F.3d 963, 966 (8th Cir. 2006), cert. denied, 127 S. Ct. 1856 (2007).

Viewing the facts known to the officers at the time of the search, we conclude the officers reasonably believed Cole resided in the Arden residence and had authority to consent to the search. Cole's invitation to the officers to enter the Arden residence and to follow her into the bedroom, her collection of pieces of clothing off the floor to dress herself, and Cole's instantaneous retrieval of the contraband evidenced Cole's familiarity with the premises and the items contained and concealed therein. Cole's

-4-

conduct, along with the visible presence of women's clothing and other personal items strewn about the residence, bolstered the reasonableness of the officers' belief Cole resided in the house. Although Hilliard was present and had the opportunity to object, he never opposed Cole's invitation to the officers to enter the residence or Cole's request that Officer Church follow her into the bedroom. Hilliard's silence in the face of events taking place before him in his own residence gave the officers no reason to believe Hilliard had a superior privacy interest or to doubt Cole's authority over the Arden residence. See Elam, 441 F.3d at 603-04 (holding the defendant's presence and failure to object during a search gave the officers no reason to believe the defendant had a superior privacy interest in the place to be searched); United States v. Stapleton, 10 F.3d 582, 584 (8th Cir. 1993) (declaring it was objectively reasonable for the officer conducting the search of a vehicle to conclude he either had all the consent that was constitutionally required, after receiving the driver's consent, or had the passenger defendant's implied consent, given the defendant's silence during the search).

Because the officers reasonably believed Cole had authority to consent to the search of the Arden residence, no Fourth Amendment violation occurred. Thus, the district court properly denied Hilliard's motion to suppress.[5]

---

[5]The Supreme Court's decision in Georgia v. Randolph, 547 U.S. 103, 126 S. Ct. 1515 (2006), does not mandate a contrary result. In Randolph, the Supreme Court held "a warrantless search of a shared dwelling for evidence *over the express refusal of consent* by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." Id. at 1526 (emphasis added). In this case, there simply is no evidence Hilliard ever objected or expressly refused consent to the officers' entry into the Arden residence or to the officers' walk through the rooms of the residence. Thus, the officers' entry into the home was reasonable and did not violate Randolph. Cf. United States v. Uscanga-Ramirez, 475 F.3d 1024, 1028 (8th Cir. 2007) (finding Randolph distinguishable where the defendant's wife consented to a search of the home–a premises over which the defendant and his wife possessed common authority–and where there was no evidence the defendant "expressly refused the officers' entry into the home").

## B.    Sufficiency of the Evidence

Hilliard contends there was insufficient evidence to support his conviction for possession of a firearm on August 17, 2005, in furtherance of a drug trafficking crime. We review de novo the denial of a motion for judgment of acquittal, United States v. Guel-Contreras, 468 F.3d 517, 521 (8th Cir. 2006), viewing the evidence in the light most favorable to the government and accepting all reasonable inferences supporting the jury's verdict, United States v. Johnson, 474 F.3d 1044, 1048 (8th Cir. 2007). "Jury verdicts are not lightly overturned." United States v. Anwar, 428 F.3d 1102, 1108 (8th Cir. 2005) (quotation omitted), cert. denied, 126 S. Ct. 1806 (2006). We must uphold the jury's verdict if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt. Johnson, 474 F.3d at 1048.

To secure a conviction under § 924(c)(1)(A) for possession of a firearm in furtherance of a drug trafficking crime, "the government must present evidence from which a reasonable juror could find a 'nexus' between the defendant's possession of the charged firearm and the drug crime, such that this possession had the effect of 'furthering, advancing or helping forward' the drug crime." United States v. Sanchez-Garcia, 461 F.3d 939, 946 (8th Cir. 2006) (quoting United States v. Hamilton, 332 F.3d 1144, 1149 (8th Cir. 2003)). A defendant's simultaneous possession of drugs and a firearm, standing alone, is insufficient to sustain a conviction. See United States v. Spencer, 439 F.3d 905, 914 (8th Cir. 2006). Rather, there must be evidence from which the jury could infer "the defendant's possession of the firearm facilitated the drug crime, through evidence that the firearm was used for protection, was kept near the drugs, or was in close proximity to the defendant during drug transactions." Sanchez-Garcia, 461 F.3d at 946-47.

Relying on this court's decision in Spencer, Hilliard argues there was no evidence any law enforcement officer ever observed Hilliard possess a firearm during what the officers believed to be drug transactions, and the utter absence of such

evidence demonstrates Hilliard's conviction stems purely from his simultaneous possession of drugs and a firearm within the Arden residence. We disagree. The jury reasonably could have concluded Hilliard's possession of the firearm facilitated the crime of possession with intent to distribute cocaine base. On August 17, 2005, officers located the .357 Magnum in Hilliard's bedroom beneath a pillow on Hilliard's bed. Hilliard's bedroom was located just down the hall from the kitchen, where officers found a substantial quantity of crack cocaine. On the same day, officers also found several pieces of expensive jewelry and $791 in money orders in the Arden residence, and over $1,100 cash on Hilliard's person. Coupled with these facts is Hilliard's unequivocal admission to officers he kept the firearm for protection.

Additionally, the government presented expert testimony through Detective Edward Clay (Detective Clay) of the St. Louis Metropolitan Police Department about the common role of firearms in protecting drug dealers and the cash they often possess, "a role that this court has long recognized." Id. at 947. Detective Clay also testified powerful firearms like the one found in the Arden residence are effective for this purpose because such guns can be concealed easily. The firearm's close proximity to large quantities of drugs and valuable property, Detective Clay's expert testimony regarding the use of firearms in drug trafficking for protection, and Hilliard's own admission to officers he used the firearm for protection provides sufficient evidence to support Hilliard's conviction under § 924(c)(1)(A). See, e.g., Sanchez-Garcia, 461 F.3d at 946-47 (finding sufficient evidence to support the defendant's conviction under § 924(c) given the firearm's proximity to saleable quantities of drugs and to drug-packing paraphernalia, as well as expert testimony regarding the common use of firearms in drug trafficking). We therefore affirm the denial of Hilliard's motion for judgment of acquittal.

### C. District Court's Drug Quantity Finding

Finally, Hilliard argues the district court lacked authority to increase Hilliard's sentence based on a drug quantity finding made by a preponderance of the evidence

standard, rather than by a jury beyond a reasonable doubt. This argument lacks merit. It is well settled that "judicial findings of drug quantity for sentencing purposes do not violate the Sixth Amendment when made under an advisory [Sentencing] Guidelines regime." United States v. Davis, 457 F.3d 817, 825 (8th Cir. 2006) (quoting United States v. Tabor, 439 F.3d 826, 830 (8th Cir. 2006)), cert. denied, 127 S. Ct. 1386 (2007). Because the district court applied the Sentencing Guidelines in an advisory manner, there was no Sixth Amendment error in the district court's finding of drug quantity under the preponderance of evidence standard.

## III.  CONCLUSION

For the reasons stated, we affirm Hilliard's convictions and sentence.

_____