# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1935
_____

United States of America

*Plaintiff - Appellee*

v.

Kpangbala Benyan Blamah

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern
_____

Submitted: March 20, 2025
Filed: July 21, 2025
_____

Before COLLOTON, Chief Judge, ERICKSON and GRASZ, Circuit Judges.
_____

ERICKSON, Circuit Judge.

A jury found Kpangbala Benyan Blamah guilty of conspiracy to distribute cocaine and marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), (b)(1)(D), and § 846; possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and being a felon in possession of firearms,

in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8). The district court[1] sentenced Blamah to 360 months' imprisonment. On appeal, Blamah challenges the sufficiency of the evidence supporting the jury's drug quantity finding and the firearm possession conviction. He also contends the district court abused its discretion when it admitted, over his objection, evidence of two previous shootings as intrinsic to the charged offenses. We affirm.

## I.    BACKGROUND

In the summer of 2022, law enforcement officers in Illinois and Iowa opened an investigation related to Blamah after two separate shooting incidents occurred that involved vehicles linked to him. The first incident happened on June 27 in Rock Island, Illinois, where officers responded to a shots-fired call. A witness reported seeing an occupant in a black Toyota Camry with Illinois plates shoot at a young male on a bicycle in the area. Another witness told investigators that the young male on the bicycle was associated with individuals who sold drugs in the area. Officers recovered five Blazer-brand 9mm casings. The second shooting occurred in the early morning hours on August 4 in Davenport, Iowa, at a condominium complex. Officers recovered six more Blazer casings and observed a parked unoccupied white vehicle that had been struck by gunfire, and a parked unoccupied green vehicle and a garage door damaged from a vehicle collision.

A subsequent review of surveillance footage showed a dark-colored sport utility vehicle enter the parking lot at a high rate of speed, move out of view, and then leave the parking lot at a high rate of speed as shots were being fired. Officers later located a vehicle matching the description with body damage, white paint transfer, no front passenger tire, and two bullet holes in the right side of the rear tailgate. The vehicle was registered to Chancey Wheeler, Blamah's ex-girlfriend and the mother of his child.

---

[1]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

On the afternoon of August 4, investigators received notification from the Vigilant License Plate Recognition System ("LPR") that the black Camry from the Rock Island shooting had been spotted in Davenport. Officers responded to the area identified by the LPR, located the vehicle, and conducted surveillance until they lost contact with the vehicle.

In the early morning hours of August 7, officers responded to Wheeler's residence on a harassment complaint. Officers, while on scene, observed a black Toyota Camry enter the alley behind Wheeler's residence and park behind the residence. As marked patrol vehicles entered the alley with the intent to block the Camry from leaving, the Camry began driving east through the alley. As the patrol vehicles converged on the Camry, Blamah exited the driver's seat of the vehicle and began running. A passenger also jumped out of the Camry and fled on foot. Uniformed officers chased the fleeing men but lost sight of both of them.

In plain view inside the Camry, officers observed a loaded Glock 9mm semi-automatic handgun on the front passenger seat. They also located three iPhones in black cases on the ground in the vicinity of the Camry. Officers obtained possible phone numbers for the iPhones and were able to confirm that at least one of the phones belonged to Blamah. Pursuant to a search warrant for the Camry, officers found a clear plastic bag containing 107.3 grams of marijuana, a clear plastic bag containing 10.8 grams of marijuana, two clear plastic bags containing 5.75 grams of marijuana, a digital scale, packaging material, a red iPhone, and an Illinois license plate, which was reported stolen on July 13, 2022.

Forensic analysis of Blamah's phone indicated he had been shipping packages through the U.S. Postal Service from California to Davenport. On September 8, 2022, postal inspectors intercepted a package addressed to Jeremy Hucks, a Davenport resident, that contained a one-kilogram brick of cocaine marked with the word "BOSS." Blamah's fingerprints were found on the packaging, and, at trial, Hucks confirmed that Blamah was his source. Postal records indicated ten other packages, ranging in weight from 0.7 to 2.6 kilograms, had been sent from California

to Hucks's address. The phone also contained drug-related messages between Blamah and Lakeisha Branom, including a discussion about Blamah storing drugs at Branom's residence, instructions indicative of cutting cocaine, prices for marijuana, and statements about Branom trafficking drugs under the direction of Blamah. In one conversation, Branom sent a photograph of a clear plastic bag of suspected cocaine on a digital scale.

On October 20, 2022, ten federal search warrants were executed at residences associated with Blamah. At Blamah's home, officers discovered 441 grams of marijuana, records of Blamah's flights to California, and two cellphones on Blamah's person. At his mother's home, they found marijuana residue, a drug ledger, and $3,100 in currency in a safe. At Branom's apartment, they found mail addressed to Blamah, a one-kilogram brick of cocaine marked "BOSS," half a kilogram of cocaine inside plastic bags, two firearms (a Taurus .45 caliber firearm and a Taurus 9mm firearm), and other drug paraphernalia. Blamah's fingerprints were on the cocaine packaging and text messages confirmed Blamah had access to Branom's apartment.

A grand jury returned a superseding indictment charging Blamah with conspiracy to distribute cocaine and marijuana, possession of a firearm in furtherance of a drug trafficking crime, and being a felon in possession of firearms. Before trial, Blamah moved to exclude evidence of the two shootings. The district court denied the motion on the grounds that the shootings were either intrinsic to the charged offenses or admissible under Federal Rule of Evidence 404(b). The jury convicted Blamah on all counts and found the conspiracy involved marijuana and five or more kilograms of cocaine. Blamah then unsuccessfully moved for a judgment of acquittal or a new trial. The district court sentenced Blamah to a 360-month term of imprisonment, followed by five years' supervised release.

On appeal, Blamah challenges the sufficiency of the evidence, asserting (1) the conspiracy did not involve over five kilograms of cocaine, and (2) he did not possess a firearm in furtherance of drug trafficking. He also contends the district

court abused its discretion when it admitted evidence of the Rock Island and Davenport shootings because the shootings were not relevant or intrinsic to the crimes charged, they were not proper Rule 404(b) evidence, and the evidence was inadmissible under Rule 403.

## II.    DISCUSSION

We review the sufficiency of the evidence supporting Blamah's convictions *de novo*.  United States v. Hill, 31 F.4th 1076, 1087 (8th Cir. 2022).  When we do so, we view the evidence in the light most favorable to the jury's verdict, resolve conflicts in favor of the verdict, and accept all reasonable inferences supporting the verdict.  United States v. Hewitt, 999 F.3d 1141, 1146 (8th Cir. 2021) (per curiam).  "A conviction is supported by sufficient evidence unless no reasonable jury could have found the defendant guilty beyond a reasonable doubt."  Hill, 31 F.4th at 1087.

### A.  Drug Quantity

Blamah contends there was insufficient evidence establishing the drug conspiracy involved more than five kilograms of cocaine.  At trial, the prosecution introduced evidence connecting approximately 10 kilograms of cocaine to Blamah: 1 kilogram from the package to Hucks intercepted on September 8, 2022, 1.5 kilograms from Branom's apartment, and an estimated 7.5 kilograms based on the weights of the other ten packages sent to Hucks's address.  Blamah contends the weight of the ten packages is too speculative since the law enforcement did not intercept and search them.

"In a drug conspiracy, a defendant is held responsible for all reasonably foreseeable drug quantities that were within the scope of the criminal activity that he jointly undertook."  United States v. Vinton, 429 F.3d 811, 817 (8th Cir. 2005).  At trial, Hucks testified he was a cocaine user and Blamah was his source.  The prosecution also presented postal records indicating Blamah mailed packages from California to Hucks's Davenport address.  In addition, text messages on Blamah's

phone indicated that he made repeated trips to California, supplied Hucks with cocaine, and used the term "boss" in reference to it. Taken together, and viewed in a light most favorable to the verdict, the seized "BOSS"-marked cocaine, Hucks's testimony, the postal records, and the corroborating messages provided ample evidence for the jury to reasonably find the conspiracy involved five or more kilograms of cocaine.

## B. Possession of a Firearm in Furtherance of a Drug Conspiracy

Blamah next contends the prosecution failed to prove beyond a reasonable doubt that he possessed a firearm in furtherance of a drug trafficking crime. To sustain this conviction, the prosecution must "prove a nexus between the possession of the firearm and the underlying drug crime." United States v. Kent, 531 F.3d 642, 652 (8th Cir. 2008) (citation omitted). A jury may infer such a nexus where (1) "the firearm is kept in close proximity to the drugs," (2) "it is quickly accessible," and (3) "there is expert testimony regarding the use of firearms in connection with drug trafficking." United States v. Shaw, 751 F.3d 918, 922 (8th Cir. 2014) (cleaned up). Simultaneous possession of drugs and firearms is not enough to support a conviction under 18 U.S.C. § 924(c), United States v. Hilliard, 490 F.3d 635, 640 (8th Cir. 2007), and the jury was specifically instructed that possession of drugs and a firearm, standing alone, is not enough.

Here, there was ample evidence for the jury to find beyond a reasonable doubt that Blamah possessed a firearm in furtherance of drug trafficking. The firearms and cocaine recovered from Branom's residence were on the same shelf in the bedroom closet. Text messages confirmed the firearms belonged to Blamah, who had regular access to Branom's apartment and the closet where the drugs and guns were stored. A special agent from the Iowa Division of Narcotics Enforcement provided expert testimony to the jury regarding the frequent use of firearms in drug distribution. There was evidence from which a jury could find that one of Blamah's firearms found in Branom's residence was used in the two shootings. On this record, there

was sufficient evidence for a reasonable jury to find Blamah possessed one or more firearms to further his drug operations.

### C. Admission of Evidence from Rock Island and Davenport Shootings

Blamah asserts the district court abused its discretion when it admitted evidence from the Rock Island and Davenport shootings as intrinsic to the charged offenses. We review both the denial of a motion in limine and the determination that evidence is intrinsic for abuse of discretion. United States v. Hall, 604 F.3d 539, 543 (8th Cir. 2010); United States v. Brown, 122 F.4th 290, 296 (8th Cir. 2024).

Evidence is intrinsic when it is "inextricably intertwined" with the charged conduct, either because it completes the narrative of the offense or provides context essential to the jury's understanding of the crime. Hall, 604 F.3d at 543. We have observed that firearms are often tools of the drug trade. United States v. Dierling, 131 F.3d 722, 732 (8th Cir. 1997). Evidence of shootings may also help establish a defendant's role in advancing a drug conspiracy. United States v. Stewart, 777 F. App'x 849, 850 (8th Cir. 2019) (unpublished per curiam).

Blamah asserts evidence of the shootings was not intrinsic to the firearm possession charge because the prosecution failed to establish that he was the shooter, and, at most, it established vehicles associated with Blamah were at the scene. The Davenport shooting involved a vehicle registered to Wheeler, who lived with Blamah at the residence where officers later found large amounts of cash, marijuana, and evidence of drug trafficking, including travel records confirming Blamah's repeated trips to California. Shell casings from the scene matched the 9mm firearm later recovered from Branom's closet near 1.5 kilograms of cocaine. This evidence helped establish connections between Blamah, his co-conspirators, and the tools of their drug operation.

The Rock Island shooting is intrinsic evidence for a similar reason. At trial, an officer from the Rock Island Police Department testified that, as part of his

investigation, he watched traffic camera footage of a black Camry circle a parking lot in which two men were arguing—one in a car and one on a bike. The officer saw muzzle flashes from the driver's side window of the Camry. Other officers flagged the Camry's plate in Iowa, encountered it behind Branom's apartment, and watched Blamah flee from it. Later, they found Blamah's cell phones nearby and a firearm inside the vehicle. The Camry's involvement in both the Rock Island shooting and the charged conspiracy provided context linking Blamah to the firearm as well as Branom and Wheeler. Like the Davenport shooting, the evidence connected Blamah to a firearm used during a shooting and was probative as to the nature and scope of the drug trafficking conspiracy.

To the extent Blamah asserts that Federal Rule of Evidence 403 applies because the shootings were not drug-related, the assertion is unavailing. Rule 403 permits exclusion of relevant evidence only if its probative value is "substantially outweighed" by risks such as unfair prejudice, confusion, or delay. Fed. R. Evid. 403. But "Rule 403 does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case." United States v. McCourt, 468 F.3d 1088, 1092 (8th Cir. 2006) (cleaned up). Here, the evidence was not "so inflammatory" as to distract the jury from the material issues at trial. See United States v. Betcher, 534 F.3d 820, 825 (8th Cir. 2008). It was highly probative of a central issue: Blamah's firearm possession. Accordingly, the district court acted within its discretion in admitting evidence from both shootings.[2]

## III.   CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____

---

[2]Because evidence from the Rock Island and Davenport shootings was properly admitted as intrinsic evidence, we need not consider the alternative rationales provided by the district court.